53    51
s63    18

## JOHN B. LAFEYTH v. THE EMPORIA NATIONAL BANK.

TORTIOUS CONVERSION—*Facts, Stated—Bank Liable.* B., who owned a herd of cattle, gave to L. a first mortgage upon 14 of them; and to a bank he gave another mortgage on some of these, as well as upon the remainder of the herd. Both mortgages were duly recorded. The bank's debt being overdue, and supposing that its mortgage covered the whole of the cattle and was superior to all other liens, it agreed with B. that he should make a public sale of them, and that the proceeds should be applied in payment of the mortgage debt which it held against B. The bank sent one of its officers to the sale to assist B., but mainly to protect the interests of the bank, as it claimed the cattle under its mortgage; and at the sale two of the cattle included in the mortgage to L. were sold and the proceeds of the sale taken to and retained by the bank. *Held*, That the action of the bank in aiding and assisting B. in the sale made it liable to L. as for a conversion of the two animals wrongfully sold.

### *Error from Lyon District Court.*

ACTION by *Lafeyth* against the *Emporia National Bank* for the alleged conversion of certain cattle. Judgment for defendant, March 29, 1890. The plaintiff comes here. The opinion states the facts.

*E. W. Cunningham,* for plaintiff in error:

We think that Bacheller was the agent of the bank in selling these cattle. The bank officials were claiming that the bank had a mortgage on these Lafeyth cattle and had a right to have them sold thereunder, and even in the answer justified by reason of such mortgage, and under that claim were pressing and urging Bacheller to sell—knew that he was going to sell and authorized him so to do—and received the proceeds of such sale. Now, as to this plaintiff, does not that clearly make Bacheller the agent of the bank? All who aid, command, advise or countenance the commission of a tort by another, or who approve of it after it is done, are liable, if done for their benefit, in the same manner as if they had done the tort with their own hands. *Judson v. Cook,* 11 Barb. 642; *Her-*

*ring v. Hoppock,* 15 N. Y. 413; *Moir v. Hopkins,* 16 Ill. 313; same case, 63 Am. Dec. 312. The bank would therefore be liable regardless of the question of knowledge of Lafeyth's mortgage. *Brown v. Campbell,* 44 Kas. 237.

*Lambert & Dickson,* for defendant in error:

Counsel for plaintiff in error contends that Bacheller was the agent of the bank in the sale of these cattle. The bank held a mortgage on about 80 head of cattle, to secure Bacheller's debt to it. It was threatening to foreclose its chattel mortgage unless it was paid. Further, the bank allowed Bacheller to sell these cattle at public or private sale, notwithstanding its mortgage. So far as the public was concerned, they virtually released their mortgage, relying upon Bacheller's honesty to pay his debt from the proceeds. Bacheller says that all the bank had to do with the sale, it was pressing him for money.

But it is said an employé of the bank, Halleck, attended that sale. The testimony shows he attended at the request of Bacheller, for the purpose of passing upon the commercial value of paper that might be offered. We think this certainly disposes of the idea that Bacheller acted as agent for the bank when he sold the Lafeyth cattle. But two of them were sold that day. The remaining six head Bacheller disposed of from time to time afterward, with all the other cattle covered by the bank mortgage.

The opinion of the court was delivered by

JOHNSTON, J.: This action was brought to recover for the alleged conversion of nine heifers and three bulls, of the value of $400. C. B. Bacheller, who owned a herd of cattle, about 80 in number, gave mortgages upon them to John B. Lafeyth and the Emporia National Bank. Lafeyth had a mortgage on 14 of them, to secure an indebtedness of $300, some of which appear to have been included in the mortgage given to the bank. It seems to have been the understanding of the officers of the bank that the bank's mortgage covered

the whole herd, and that it was superior to any other liens held against the cattle. Where the same cattle were included in both mortgages, it has been found that the one given to Lafeyth gave him the first lien upon such cattle. The debt to the bank was past due, and it was pressing Bacheller for payment, and he had been warned that if the debt was not taken care of, the bank would proceed to recover it from the mortgaged property. To meet this demand, and in accordance with an agreement with the bank, Bacheller advertised and held a public sale of the cattle, which was attended by an officer of the bank. The sale had not proceeded far when it was discovered that the cattle were not bringing a fair price, when the public sale was discontinued. At that sale, however, two animals upon which Lafeyth had a first lien were sold, for which the purchasers gave notes, which were turned over to the bank, discounted, and credited upon Bacheller's indebtedness to the bank. Afterward, the remainder of the herd was sold at private sale for cash and approved promissory notes, all of which were turned in to the bank and placed to Bacheller's credit. In this way Bacheller sold six other animals which were covered by the Lafeyth mortgage, thus making eight of the animals on which Lafeyth held a lien that were disposed of by Bacheller and the proceeds turned over to the bank. The six other animals that were included in the Lafeyth mortgage either died or were otherwise disposed of, and none of the proceeds of these was ever received by the bank. Lafeyth then brought the present action against the bank, alleging a wrongful conversion of the cattle, and the court found from the evidence that Lafeyth held the first lien upon the eight animals in controversy, but that the acts of the bank and its agents did not amount to a conversion of any of them, and accordingly gave judgment.

If, as contended by the bank, it did not participate in the sale, and if Bacheller alone sold the cattle and turned the proceeds of the same over to the bank in payment of an existing indebtedness against him, and this was done without any knowledge by the bank that any particular portion of

the proceeds was derived from the sale of the cattle in controversy, then certainly the ruling of the court was correct, and an action for the conversion of the animals does not lie. Such an action might be maintained against Bacheller who sold the cattle, and Lafeyth might follow and recover them from the purchasers. If this was a proceeding to reach the proceeds of the cattle or to follow and reclaim a trust fund, other and different considerations would arise, but being an action for the wrongful sale and conversion of property, no recovery can be had for a misapplication of the proceeds of the property which were paid by Bacheller to the bank. (*Bixell v. Bixell,* 107 Ind. 534.)

From the evidence and findings of the court, we must assume that the bank had no connection whatever with the disposition of the cattle sold at private sale, but reading the testimony of the defendant, we cannot say that it had no connection with the disposition of the two animals covered by the Lafeyth mortgage, which were disposed of at public sale. If the bank joined with Bacheller in wrongfully selling and disposing of the mortgaged cattle, a liability arises against either or both of them for the wrongful conversion of the same. Now, the testimony offered in behalf of the bank shows that the bank considered that it had a mortgage on all of the cattle; that it consented and agreed that a public sale of them should be made, and the proceeds applied in discharge of Bacheller's indebtedness. The sale, it is true, was advertised in the name of Bacheller, and did not purport to be a sale under the mortgage of the bank. It is also stated that Halleck, an officer of the bank, attended the sale, mainly at the instance of Bacheller, to examine and pass upon promissory notes and securities which purchasers might give for cattle. Halleck, however, states that he went there by "request of Bacheller and the bank, to look after the interests of the bank." He states that he went there at the request of Major Hood, who was the manager of the bank, and attended the sale for the purpose of looking after the interests of the bank, as the bank claimed the cattle under a chattel

mortgage. The notes which were taken for the two Lafeyth animals were carried by Halleck to the bank, and the proceeds of the same applied by it on the payment of Bacheller's debt. Major Hood testified that Bacheller sold the cattle and brought the proceeds to the bank, but he admitted that he consented that the sale should be advertised and held; that he claimed the cattle in controversy by reason of a mortgage; that he was urging Bacheller to realize upon the cattle and make payment of his debt; and that Halleck was sent to and assisted in the sale in the interest of both Bacheller and the bank, but particularly in the interest of the bank. It is thus shown that the bank not only agreed upon a sale of the cattle, but that it actually coöperated with Bacheller in making a sale of two of them. The proceeds of the sale were taken to and retained by the bank. As the mortgage of Lafeyth was recorded, the bank must be held to have knowledge of the lien which it created, and that a sale of the cattle by Bacheller without the consent of Lafeyth would be a tortious conversion of the same. As the bank aided and assisted in the sale and conversion of two of the animals, it becomes liable to an action for a wrongful conversion of them equally with Bacheller. (*Brown v. Campbell*, 44 Kas. 237; Wait, Act. & Def. 140; Cooley, Torts, 451.)

The judgment of the district court will be reversed, and the cause remanded for a new trial.

All the Justices concurring.