## McCARTY et al. v. HOGAN.

No. 13819.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 21, 1938.

Rehearing Denied Nov. 18, 1938.

500

Harris & Martin, of Wichita Falls, for appellants.

Taylor, Muse & Taylor and Bruce Greenwood, all of Wichita Falls, for appellee.

SPEER, Justice.

J. T. Hogan sued J. A. McCarty and C. F. Peterson in a district court of Wichita County, for damages to crops, livestock and grass on pasture lands for their alleged negligent acts in permitting salt water from oil wells to escape from pits or ponds and spread over plaintiff's lands, at specified times. Judgment was entered for plaintiff, and defendants have appealed.

No jury being demanded, the law and facts were submitted to the court for determination.

Appellants base their appeal upon propositions under their assignments of error, to the effect that the petition was subject to both general demurrer and special exceptions urged and overruled by the court; and further that if they be mistaken in this contention, there was no evidence before the court to support a finding of negligence to support the judgment entered.

Appellee's petition was sufficient, if proven, to establish as a fact that he was a tenant on certain lands during the year 1936, and entitled to its use free of the acts of appellants in the respects complained of; that appellants owned and operated an oil and gas lease in what is commonly called the K M A oil field, and that a public road divided the two tracts. That the natural slope of the ground from appellants' lands was toward that of appellee. The wells, the source of the matters complained of, are about one-half mile from appellee's land. That appellee planted and had growing on his lands about 40 acres of cotton and had about 10 acres of native grass, the latter being used for pasturage purposes for milk cows and work-stock on the place. That at the time appellee claims appellants caused his damages, the cotton was matured and would soon be ready to gather without further cultivation.

Appellee alleged that appellants, prior to the time of the damages complained of, had drilled several oil wells on their property and were pumping oil therefrom; that in removing the oil, large quantities of salt water were pumped from the wells; that they had prepared certain pits and reservoirs in the vicinity of the wells, and had pumped the salt water into the pits; that the pits were insufficient in size and depth to contain the salt water; that appellants knew, or by the exercise of a small amount of diligence, could have known, they were insufficient for that purpose, and that if the pits and reservoirs did not retain the salt water, appellants well knew it would flow down the draw or ditch in that vicinity and go upon the lands of appellee; that the pits and reservoirs were inadequate to retain the quantities of salt water placed therein by the appellants, and of this fact they had full knowledge. Allegations were made that during rains on about September 16, 1936, and September 23d, of the same year, the salt water so pumped into said pits by appellants overflowed and ran upon appellee's lands, resulting in the damages sued for. In view of the contentions of appellants, we quote from the petition as follows: "That the acts of defendants (appellants here) in failing and neglecting to provide sufficient pits and reservoirs to impound the salt water from said wells, as set out above, and prevent the same from running on and across the lands farmed by plaintiff, is negligence on their part, and was negligence when said salt water was permitted to run across said lands on or about September 16th, 1936, and on or about September 23rd, 1936, and the proximate cause of all damages suffered by plaintiff and set out herein." The case was tried upon plaintiff's (appellee's) "second amended original petition."

The appellants (defendants below) filed a general demurrer to the amended pleading. They likewise filed three special exceptions to designated parts of "plaintiff's first amended original petition." The objections point out the parts of plaintiff's

pleadings to which the exceptions are applicable, and we find they are in the pleadings of plaintiff shown in the record, and while, as stated, that pleading is a second amended petition, we shall treat the reference to it as a first amendment as a clerical error, which could have occurred in several ways. Following the demurrer and exceptions, defendants plead the general issue.

Appellee has filed no briefs in this appeal, and we must discuss the case from the record and the contentions urged by appellants in their briefs.

What we shall say relative to the proposition about the special exception relied upon by appellants will dispose of the assignment complaining of the action of the court in overruling the general demurrer.

■■■ The proposition which complains of the overruling of the only special exception applicable to this appeal is as follows:

"Where, as in this case, the petition upon which the judgment is based fails to specifically charge the appellants with any specific act of negligence, but merely alleges that salt water coming from the wells operated by the appellants overflowed the pits and reservoirs maintained by them and ran down a ditch or draw to the west of the land farmed by appellee and overflowed the same and does not put the appellants on notice as to any specific act of negligence on their part, it is reversible error for the trial court to overrule a special exception to said petition pointing out such defects therein."

■■■ By the proposition, as quoted, appellants present a well established rule of law and procedure in this State. Turner v. Big Lake Oil Co., 128 Tex. 155, 96 S.W.2d 221. But we do not believe the proposition applicable here, because of the recitations in the petition. To paraphrase the pleadings of appellee, we may say he plead that appellants were pumping large quantities of salt water from their wells at the time of and prior to the date on which appellee claims to have suffered his damages; that it was the duty of appellants to construct adequate pits and reservoirs to contain that water to prevent it passing down the natural slope of the ground in that vicinity and down a draw or ditch on to appellee's farm lands; that they had full knowledge if the water escaped it would damage appellee's crops; that they knew said pits were inadequate for that purpose, and that they negligently failed to prepare and maintain adequate and sufficient reservoirs for that purpose, and that when the water did escape onto appellee's lands on the two dates in September, 1936, it was the result of and proximately caused by the negligence of appellants in failing to maintain adequate pits and reservoirs to retain said salt water and prevent it from escaping onto the farm, resulting in the damages complained of. To sustain a claim for actual damages, we do not understand the rule of pleading to require a plaintiff to allege and prove the defendant had committed a willful, deliberate or premeditated act, amounting to criminal negligence, to support a judgment. But we find here an allegation that appellants were accumulating this salt water as it was pumped from their wells, with knowledge that if it escaped onto other lands, damages would follow; that to prevent its escape and the consequent damages to another, it must maintain suitable provisions for its retention; that they failed to do this and such failure was negligence; the two dates on which the negligent acts were shown to have caused the damages, are given. Negligence may consist of the omission of the performance of a duty, as well as by the improper or careless manner in which a duty is attempted to be performed.

In Turner v. Big Lake Oil Co., supra, the court had for consideration a case similar in some respects to appellee's claim against appellants. The Supreme Court said the Court of Civil Appeals correctly held that in order for plaintiffs to recover, "they must allege and prove some specific act of neglect or must allege and prove that the water polluted was a water course." The Supreme Court further stated that the jury acquitted the defendant in error (defendant below) of any negligence in the premises. The findings of the Court of Civil Appeals that the petition did not charge the pollution of streams and water courses were approved by the Supreme Court. The plaintiffs did not recover in that case, but by reference to a full discussion of the facts by the Court of Civil Appeals, as reported in 62 S.W.2d 491, we may fairly assume that while defendant did permit salt water to escape from their reservoirs, that it did not result from any careless or negligent act on its part; and certainly therein lies the distinction in that and the instant case. We shall have occasion to refer later in this discussion to the findings of negligence in this case.

Appellants cite us to the case of Nash & Windfohr v. Edens, 109 S.W.2d 496, decided by this court, to support their proposition, above quoted. To read that opinion is to distinguish it from the case at bar. There, general allegations were made of the ownership of wells, the accumulation of salt water and its escape into Farmer's Branch and thence into Salt Creek; that plaintiff was the owner of lands upon which pecan trees were growing along and adjacent to Salt Creek, and that he was owner of certain strawberry plants on parts of the land, and that if defendants continued to permit salt water to come into said creek it would soak back into the ground and kill his trees and had killed his strawberry plants; the pleading reads more like the plaintiff would eventually pray for injunctive relief. But more specifically it was alleged that for two years preceding the institution of suit, defendants had continued to allow salt water and brine to escape from their wells and pits made to retain it, and to come down Salt Creek. It was alleged that such acts were nuisances and constituted negligence, and that defendants well knew them to be such, proximately causing plaintiff's damages. Relying upon the doctrine announced in Turner v. Big Lake Oil Co., supra, we said there were no sufficient allegations of specific acts of negligence as would support a judgment for plaintiff. There are other features of that case materially different to the one before us, not necessary to here enumerate. It will be observed we also held there was no sufficient evidence shown to support a specific charge of negligence on the part of defendants; it was also held that even if the petition had been good as against the special exception leveled at its uncertainty, still the wrong measure of damages was plead and proved, requiring a reversal of the case. We think the petition in the instant case was good as against the special exception presented, wherein it was claimed there were no sufficient allegations, to put defendants upon notice of specific acts by them, which were claimed to constitute negligence on their part.

By other propositions, it is earnestly insisted by appellants that there is no testimony in the record to support the findings by the court that they were guilty of negligence, proximately resulting in appellee's alleged damages. We have carefully read the transcript of the testimony adduced upon the trial, and find this is one of those cases which could have been decided either way, and yet find support in the evidence. The testimony of the various witnesses was highly conflicting in many respects.

As stated, there was no jury and the court determined the facts in lieu of a jury. The same rule of law respecting the sufficiency of testimony to support a jury verdict is applicable to facts found by the court in the absence of a jury. Likewise, the rule may be applied which authorizes a court to give a summary instruction when there is no testimony of probative force to support a verdict contrary to such instruction. In cases like this, where the evidence is conflicting and there is a sufficient amount to warrant a finding either way, it is not within the province of this court to criticize either, when determined by the jury or the court sitting in lieu thereof. The rule applicable here is announced in 17 Tex.Jur. p. 909, § 410, in this language: "To sustain a verdict or finding the evidence must be reasonably sufficient to satisfy the trier of facts of the truth of the allegations, or sufficient to warrant a reasonable belief of the existence of the fact which is sought to be inferred. * * * If, discarding all adverse evidence, and giving credit to all evidence that is favorable to the successful party, and indulging every legitimate conclusion that is favorable to him, a jury might have found in his favor, then it is to be concluded that there is evidence to support the verdict." The last part of the foregoing quotation was taken from the language used in Wininger v. Ft. Worth & D. C. Ry. Co., 105 Tex. 56, 143 S.W. 1150; the rule was cited with approval in Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696; Underwood v. Security Life & Annuity Co., 108 Tex. 381, 194 S.W. 585, and many times by the Courts of Civil Appeals, including Four States Grocery Co. v. Gray, 97 S.W.2d 355, writ dismissed; Roeser v. Coffer, 98 S.W.2d 275; Upton v. Dolsby, 119 S.W.2d 571; Traders & General Ins. Co. v. Durbin, 119 S.W.2d 595.

In the case at bar, to apply the rule last announced and disregard the controverting evidence given by the defendants, we find the plaintiff testified in substance, relating to the source of his damages, that the pits and reservoirs provided by defendants to retain the salt water pumped from their

wells were situated on a short water shed, draw or drain a short distance above his land; that there were no other such pits on that watershed; that the closest one of defendants' pits was 235 steps from his land; he looked at that pit a few days before the rains which fell on September 16th and 23d, respectively, and noticed that the dams or dikes had caved off in places and the water was level with the broken places and wind was blowing small amounts of water over the dam; that any amount of rain that would raise the surface of the water would cause it to overflow; that if water came out of that pit it would of necessity come down grade onto his land; immediately after the rains he visited the pit and found the water coming out and into the draw that passed it onto his land; that there was less water in the pit after the rain than there was before; at the time complained of the water stood from four to six inches deep on his cotton land and stayed there three or four days; that the water came out of the pits on the occasions of both rains; from appellee's observation in the past salt water will kill vegetation; on about the second day after the water came onto his land, the cotton began to wilt, as if it had been scalded, and the bolls began falling off, and those that did not fall off rotted; within a few days the leaves and bolls all fell off and the stalks eventually died; he had seen overflows of fresh water in such quantities as on this occasion and the cotton did not die as his did; his testimony relative to the grass on his 10 acre pasture tract was substantially the same. There were other claims for death and damage to livestock, and to a failure to grow a crop for 1937, but no recovery was allowed for either, and it becomes unnecessary to discuss that phase of the testimony. The court entered judgment for $263 for the loss of cotton, and $10 for the grass on pasture land.

▉ The court evidently gave credence to the evidence mentioned over the testimony offered to controvert it; this goes to the weight and preponderance of which a jury or the court sitting in its place is the exclusive judge. We have no authority, even if we were so inclined, to substitute our own ideas under such circumstances for that of the trial court. We find no error in the court's actions in the matters complained about, and the judgment entered is affirmed.