## WORTH FINANCE CO. v. CHARLIE HILLARD MOTOR CO.

No. 13925.

Court of Civil Appeals of Texas.
Fort Worth.

June 23, 1939.

Rehearing Denied Sept. 15, 1939.

418

J. Rob Griffin, of Fort Worth, for appellant.

Slay & Simon, of Fort Worth, for appellee.

SPEER, Justice.

Charlie Hillard, doing business as Hillard Motor Company, to whom we shall refer as appellee, sued Worth Finance Company, a corporation, which, for convenience, we shall call appellant, and Carl Lawder, whom we shall call by name, on three counts in the petition. These counts may be briefly referred to as (1) for breach of a warranty in the title of an automobile, alleged to have been sold by appellant to appellee, (2) for an unjust enrichment coming to appellant from appellee, for which the latter received nothing, and (3) for conversion by appellant of an automobile upon which appellee claimed to have held a valid and subsisting first chattel mortgage lien.

The case was tried to the court without the intervention of a jury, resulting in a judgment in favor of appellee, jointly and severally against appellant (Worth Finance Company) and Lawder, for $143.05, and against Lawder alone for the additional sum of $116.95. By this judgment it will be noted appellee recovered against Lawder for the aggregate sum of $260, while $143.05 of that amount was rendered jointly against the two defendants. Both the appellant and Lawder excepted to the judgment and gave notice of appeal, but the Worth Finance Company alone perfected the appeal to this court.

We are first confronted with appellee's objection to a consideration of appellant's briefs, upon the grounds that they do not conform to the rules prescribed in such cases. It is urged that no assignments of error were filed in the trial court, and none are contained in appellant's briefs; that said briefs contain abstract propositions not applicable to any action of the trial court, and not referable to any ruling of the court, but in the main complain that the evidence adduced upon the trial does not support the findings of fact, upon which the court entered judgment.

Article 1844, Vernon's Texas Civil Statutes, specifically provides that assignments of error need not be filed in the trial court. But that article does require that all assignments shall be contained in appellant's brief, and that they shall distinctly and specifically point out the errors of the court relied upon. Substantially the same language relating to assignments of error is used in Rule 24, as recently promulgated by the Supreme Court, contained in 126 Tex. VI.

Article 1757, Vernon's Texas Civil Statutes, as amended by the 42nd Legislature, c. 45 now provides that a brief, among other things, shall contain, "* * * 2. The alleged error or errors upon which the appeal is predicated." Under this statute, it is not required that a brief shall contain a proposition relating to or explanatory of the error assigned. We have heretofore stated in our opinions, when the subject has been before us, that since such propositions are not prohibited by statute, we welcomed them to be shown in briefs. However, it seems to be the rule now that if counsel chooses to call the error complained of, a proposition, it should not be disregarded on account of the name assigned. We had this question before us in the case of Gavin v. Webb, 99 S.W.2d 372, and there expressed our views on the subject, but the Supreme Court, in dismissing the application for writ of error, 128 Tex. 625, 101 S.W.2d 217, expressed its disagreement with what we had said, and on motion for rehearing by a Per Curiam opinion, said the brief, which we had rejected in part, should have been considered in its entirety. Since the last above expression by the Supreme Court, we are inclined to resolve every possible doubt in favor of the validity and sufficiency of all expressions of com-

plaint presented by appellants in their favor, whether they be called assignments of error, points or propositions. This construction, however, entails decidedly more labor on our part, to search the record of the transcribed testimony, to ascertain if a litigant has received his full rights at the hands of a trial court. To our minds, the statute, as amended, has complicated appellate procedure, rather than simplified it, as it was designed to do. As a matter of fact, the point raised by appellant is one of jurisdiction and is fundamental. This we must take cognizance of, regardless of how it is presented. We therefore overrule appellee's objections and will consider the "propositions" contained in the brief.

If we correctly understand appellant's first proposition, he complains that the trial court committed fundamental error in entertaining jurisdiction of this case, over appellant's plea in abatement, when the evidence upon the trial disclosed that the amount in controversy was less than $200, the minimum jurisdictional amount for a county court.

Under this proposition, counsel for appellant gives us a statement relative to the petition, in support of his contention, in which it is said: "The petition (Tr. 7) alleges the amount paid was $143 for the debt and $75 as costs." He further states that these facts are not questioned by the testimony. We have carefully read the allegations contained in the three counts of plaintiff's (appellee's) petition, and find the quoted expression of appellant somewhat inaccurate. In the first count appellee alleged his damages to be $260 for breach of a guaranty of the title to an automobile. Alternatively he plead in a second count that he had been damaged $260 because of certain wrongful acts of appellant, by which it was enriched out of appellee's funds to that extent, and had given nothing in return. And by a third count he alternatively plead that he had purchased from a Dallas concern a first and superior lien and claim to the automobile, and had paid therefor $218.00, and that appellant had subsequently converted the automobile to its own use and benefit, to appellee's damages in said sum of $218, and that "These damages being made up of the $143 debt owing the Motor Investment Co., plus the $75 expended in protection of the lien. The total damages accruing by virtue of the conversion of said automobile was the sum of $218."

No ruling is shown to have been made by the court on appellant's plea to the jurisdiction, but it appears that at the beginning of the trial the plea was called to the court's attention, counsel stating that he did not wish to waive it but that if the court should see fit to bear the plea in mind and rule upon it later, it would be satisfactory. This the court did. In the findings of fact and conclusions of law, the court found and concluded that it had jurisdiction of the parties and the subject matter, and entered judgment. This, of course, was tantamount to a judgment being entered overruling the plea.

It is a settled rule in this State that, generally, jurisdiction, insofar as the amount in controversy is concerned, is determined by the petition. That question is settled by the averments in the pleadings. 11 Tex.Jur. p. 739, sec. 26, and the many cases there cited. But if it is made to appear by a plea in abatement, supported by testimony, that the allegations of the amount in controversy were fraudulently made to improperly confer jurisdiction, the allegations made under such conditions will not control. The plea in abatement by appellant does charge a fraudulent allegation by appellee to confer jurisdiction, but it is not contended that there was any testimony offered to support the charge. It must follow, then, that since allegations of each count in the petition show jurisdictional amounts, the court was warranted in overruling the plea in abatement and in retaining jurisdiction. It has been held that in doubtful cases all intendments are in favor of jurisdiction, and unless it plainly appears from the allegations that the court is without jurisdiction of the amount, it should retain the case. 11 T.J. 742, sec. 27; Pecos & N. T. R. Co. v. Rayzor, 106 Tex. 544, 172 S.W. 1103. The latter part of the above statement has been criticized as being too broad in some cases, yet we think it very applicable here. There is no merit in the first proposition raising this point, and it is overruled.

The trial court found as a fact and concluded that as a matter of law, appellant and Lawder purchased the car as joint adventurers, for the purpose of selling it for a joint profit to both of them; that they thereafter, on the same day, sold the car to appellee for $260; that appellant made $10 and Lawder made $50; that when they sold to Hillard, they both expressly and implied-

420

ly warranted the title; that the title failed, in that the person from whom appellant and Lawder purchased, had no title and moreover that there was an outstanding prior chattel mortgage lien on the car, duly executed by the real owner to Motor Investment Company of Dallas, Texas, and that the mortgage was duly filed for record in that county. There were further findings that at the time appellant and Lawder purchased the car, appellant took a mortgage thereon from Lawder to secure the purchase price advanced by it; that appellant assented to and participated in the sale to Hillard, and that because the purchase was made to enable them to make an immediate sale of the automobile, for a profit, the sale to Hillard was a conversion of the car as against the claim and lien of Motor Investment Company. That the last named company instituted suit in Dallas County for its debt and to foreclose its lien, and Hillard being desirous of protecting the party to whom he had sold the car, purchased the debt and lien of Motor Investment Company for $218. That the amount paid was made up of $143 balance of principal unpaid and $75 of expenses incurred by Motor Investment Company in the protection of the property. In the item of $75 appears court costs, receiver's fees and expenses incurred in the Dallas County case by Motor Investment Company.

 Proposition 2 challenges the sufficiency of the evidence to support the findings of the trial court that appellant expressly or impliedly guaranteed the title to the car. The evidence was conflicting and the court sat as a trier of the facts as well as the law. In such circumstances he stands in the same relation to a case as does a jury when one is had. He is the judge of the credibility of the witnesses and the weight to be given their testimony. Sproles Motor Freight Lines v. Juge, 123 S.W.2d 919, writ dismissed, judgment correct; 3 Tex.Jur. p. 1102, sect. 771; 41 Tex.Jur. p. 1246, sect. 378. Our courts have many times held that when the evidence is such that it would support a verdict either way, the Court of Civil Appeals has not the authority to set aside the verdict of the jury, and substitute its own findings, for those of the jury. Oats v. Dublin Nat. Bank, 127 Tex. 2, 90 S.W.2d 824; Choate v. San Antonio & A. P. R. Co., 91 Tex. 406, 44 S.W. 69; Post v. State, 106 Tex. 500, 171 S.W. 707.

 There is another well established rule in this State, that is: "If, discarding all adverse evidence, and giving credit to all evidence that is favorable to the successful party, and indulging every legitimate conclusion that is favorable to him, a jury might have found in his favor, then it is to be concluded that there is evidence to support the verdict." 17 Tex. Jur. p. 909, sect. 410; McCarty v. Hogan, Tex. Civ.App., 121 S.W.2d 499, writ dismissed, and the many cases there cited.

The evidence supporting the court's finding of a guaranty of title to appellee by appellant consisted of the testimony of appellee. He said that when he agreed with Lawder as to the price he would pay for the car, Lawder told him Worth Finance Company had a mortgage on it; that he had given it to them that day with the understanding that he, Lawder, was to sell it; that appellee made out one check for $220, payable to Lawder and appellant, and another check to Lawder for $40. That appellant asked Lawder for the title papers and he told him he did not have them at that time, and appellee then went with Lawder to appellant's place of business and talked there to the manager, Mr. Watson. Appellee knew appellant company was responsible, he did not know Lawder. Appellee told Watson he wanted to pay for the car and get the papers on it. Watson took the check for $220 and offered appellee the bill of sale. (The record indicates that the bill of sale was the one the seller had given to Lawder and appellant.) Appellee further testified that he told Watson he wanted more title papers than the bill of sale. That "Mr. Watson's reply was that they hadn't gotten their papers from the party they bought the car from, but that he would see that I got them." Upon being requested to state as nearly as he could the identical language used by Watson, he said: "I said, 'will you be careful to see that I get them (the title papers) before the expiration date, filing date, on these papers?' And he said he would see to it that I got them and he would guarantee to get them to me." That Watson's Company (appellant) was a substantial concern, and that he looked to the appellant for the car to be all right; that the car was coming to him through that firm and he knew it was reliable. That he did not question the title to the car any farther, and relied upon Watson's promise.

Mr. Watson, manager of appellant, was not asked if the statements made by appellee in regard to the guarantee took place, but did say that appellee asked him to let the car be transferred to appellant and from it to him, and this Watson declined to do. He said he told appellee that he would not guarantee the car except in the same manner that Lawder had explained it to him. But Watson further testified that Lawder told him before he agreed to finance the car that he was buying it from a Mrs. Goldman, a married woman. That he told appellee that he had dealt with Lawder before and had found him reliable. That he knew Lawder expected to sell the car right soon; that he paid the $200 demanded by Mrs. Goldman, and took Lawder's note for $250, payable in monthly instalments; this was to cover money advanced, interest, carrying charges and insurance, and a chattel mortgage on the car. Watson said he made only $10 on the deal. Watson further testified that so far as he knew, Mrs. Goldman never did send the title papers, and that he did not think appellee ever received any such papers.

Under the rule announced above, there was sufficient evidence, when taken in its most favorable light to appellee, to support the court's finding that appellant expressly and impliedly warranted the title to appellee, and the contention of appellant that there was no testimony to support it, is overruled.

The third and fourth propositions are so peculiarly worded that it is difficult to discuss them. The third reads: "The entire record refutes the finding and conclusion of the trial judge that this appellant, because it as mortgagee acquiesced in the sale of the car by vendor, Lawder, to purchaser, Hillard, was thereby a party to such a sale and therefore liable to Hillard for the amount paid by appellee to the defendant Lawder."

If this proposition complains because of a lack of evidence to support the court's finding that Lawder and appellant were joint adventurers in the purchase of the car for resale at a profit, it must be overruled. We have mentioned above parts of Mr. Watson's testimony, which shows that he knew the car was to be resold; we may also add here that he said that he took his mortgage and the bill of sale to Lawder and to appellant as mortgagee, with this in view; that as he understood it, that was the way it should be done when an immediate sale was contemplated. Watson testified that he made $10 that day by advancing the money to purchase the car. The undisputed facts show he received $220 when he had only paid out $200. His further statements that "they had not gotten their papers from the party they bought the car from", and that he would guarantee that Hillard received them before the expiration date for filing, further tend to support the court's finding that it was a joint adventure between appellant and Lawder.

The fourth proposition reads: "The evidence does not support the finding, or conclusion of the trial judge, that appellant, because Lawder paid to it $220 of the money that Hillard paid him for a car, was thereby a party to a conversion of such sum of money paid by appellee for the car."

It is rather difficult to discuss such a proposition and not go far afield from this law suit. The trial court did not find or conclude that because Lawder paid to appellant $220 from the moneys received by him from the sale of the car, appellant had thereby converted that sum of money. In fact, the record before us does not indicate that Lawder paid appellant anything, but that appellee paid the $220. Nor did the court find that appellant had converted any money to which appellant had a claim. It is nowhere alleged or claimed by appellee that appellant did any of the things which it attempts to refute in the proposition.

Since we have indicated in the beginning of this opinion that we would consider the brief and propositions relied upon therein, we consider the foregoing "proposition" as if it were intended to charge that the court erred in finding and concluding that appellant and Lawder had jointly converted the car, as against appellee's claim under his purchase of the superior lien and mortgage from Motor Investment Company of Dallas.

The court concluded in this respect as follows: "I conclude further that Carl Lawder and the Worth Finance Company were each guilty of conversion, so far as the Motor Investment Company was concerned, and that said Motor Investment Company had a cause of action for conversion as against said two defendants, and that this cause of action was duly assigned to the plaintiff for a valuable consider-

ation and he, as the owner, was entitled to sue thereon and is entitled to recover as against said defendants jointly and severally, on the third count of his petition."

It is undisputed that the third count in appellee's petition sought in the alternative to recover $218 against the defendants for conversion of the car, the amount appellee had paid for the claim of Motor Investment Company. It is also true, when considered in its most favorable light to appellant, that Lawder bought the car upon which the previous lien existed, from Mrs. Goldman, who had no right or title thereto. Lawder mortgaged the car to appellant, and in the manner above mentioned, it was sold to Hillard, who in turn sold it to a stranger at Big Springs, Texas.

■ It will be noted that the suit of appellee was based upon three counts, that of express and implied breach of a warranty; illegal enrichment of appellant, that is, a failure of the consideration for the moneys paid to it by appellees; and, conversion of the car by appellant, upon which appellee held a valid lien (to secure the claim purchased by him from Motor Investment Co.). The trial court found, upon what we consider adequate evidence, that appellee had sustained his claims under each count. This, obviously, includes the count for conversion. Under that count appellee only alleged his damages to be $218. The court, for reasons explained in the judgment, believed to be equitable, only rendered judgment against appellant for $143. If we construe appellant's assignment on this point as a challenge to the court's finding that it was guilty of conversion of the car, it is without merit, for the reason that the evidence clearly shows it knew when it financed the purchase that the car was to be immediately resold, and subsequently assented to and participated in the sale, at least to the extent that it received $220 of the purchase money; applied $210 of that money to one debt and $10 to another owing by Lawder (to say nothing of the finding of the court that appellant was a coadventurer with Lawder in the deal). These acts would render appellant liable for conversion as against the owner of the prior lien. The senior lien was filed for record and appellant had constructive notice thereof. The appellant admitted that it was a mortgagee of the car, holding under Lawder (obviously a junior lien holder). This fact, when considered in its most favorable light to appellant, would constitute it a conversioner. In Oats v. Dublin Nat. Bank, 127 Tex. 2, 90 S.W.2d 824, 828, this rule is announced: "A junior mortgagee, who with constructive notice of the senior mortgage directs the mortgagor to sell the property by giving consent to the sale and who receives and appropriates all or a part of the proceeds of the sale in denial of the rights of the senior mortgagee, becomes jointly liable with the mortgagor for the conversion. Bank of Odenville v. Union State Bank, 212 Ala. 52, 101 So. 666; Henderson v. Foy, 96 Ala. 205, 11 So. 441; Lafeyth v. Emporia Nat. Bank, 53 Kan. 51, 35 P. 805; First Nat. Bank v. American State Bank, 73 Colo. 254, 215 P. 473."

■ By its fifth and sixth propositions, appellant complains that a different measure of damages was applied as against it and its co-defendant, Lawder, who has not appealed or otherwise complained of the judgment. The defendants were sued jointly under each of the three counts in appellee's petition; under each first and second counts, damages were claimed for $260; under third count the amount of damages was alleged to be $218. There was no plea of misjoinder of parties filed by the defendants below. Under the findings of fact by the court, we think he properly concluded that they were both liable under each count. If we are correct in this, a joint judgment for $260 would have found support in the pleadings and evidence. By the court's findings he concluded that Lawder was more culpable than was the appellant. The facts are undisputed that appellant financed the purchase of the car by Lawder and furnished $200 for that purpose. Appellant claims to have taken a chattel mortgage on the car to secure the advancement; neither Lawder nor appellant got anything for their money, for they got no title to the car; moreover, there was an outstanding registered chattel mortgage lien on the car executed by the real owner. Both Lawder and appellant took a chance of title when the purchase was made. When appellee purchased the car he paid out $260, and appellant got $220 and Lawder $40 of the money. Appellee likewise got nothing for his money. Appellant recouped all it had put out on the improvident deal with a $20 profit. Lawder profited to the extent of $40, and was relieved

of $220 indebtedness to appellant. As we understand appellant's brief, it insists that while no judgment should have been rendered against it in any event, yet if a joint judgment against it and Lawder was entered at all, it should have carried the same amount of liability to each. In other words, no additional amount should have been awarded against Lawder over and above the joint judgment. As an abstract proposition, we think the latter contention is correct; but there is nothing we can do about it. The judgment against appellant is for $143.05, the amount of the principal unpaid on the Motor Investment Company debt purchased by appellee, secured by the first and superior lien. Appellant was liable to appellee for conversion of the car and the amount was the least sum for which the court could render judgment against it under either count in the pleadings. As we view it, appellant cannot consistently complain because an improper amount was assessed by the judgment against Lawder, who has not appealed. Appellant has not cited us to any authority to support its contentions; we think none exists. We are not inclined to revise the judgment of the trial court against Lawder upon the request of appellant, when Lawder has not appealed and when to do so would not avail appellant anything. The error complained of is harmless insofar as appellant is concerned, and must be overruled.

Finding no error in the record for which the judgment should be reversed, it is accordingly affirmed.

### On Motion for Rehearing.

Appellant has filed a very interesting motion for rehearing in this case, consisting of what we deem an argument to support his contention that we erroneously affirmed the judgment of the trial court. No specific assignments of error are made, however, and we are not convinced by the argument that our conclusions are wrong.

In our original opinion we said: "Mr. Watson, manager of appellant, was not asked [while testifying as a witness] if the statements made by appellee in regard to the guarantee took place." Our attention is called to a part of the evidence which may properly be construed to mean that we were in error in the statement used, and gladly make the correction, for the sake of clarity.

Even though Watson did deny making the guaranty that appellee would receive the title and registration papers to the car, this would produce no more than a conflict between the evidence of the two parties. The court, hearing the evidence in lieu of a jury, gave credence to the contention of appellee. In such circumstances we would not be at liberty to substitute our own construction of the evidence for that of the trial court, and the result would be the same, insofar as the judgment is concerned.

We believe our original opinion properly announces the law applicable to this case, and the motion is overruled.