## HARTT v. YTURIA CATTLE CO. et al.
### (No. 205–3287.)

(Commission of Appeals of Texas, Section B. March 16, 1921.)

**Appeal and error ⬯43—Supreme Court held without jurisdiction of writ of error to Court of Civil Appeals involving point of admissibility of evidence.**

Under the Laws 1917, c. 75 (Vernon's Ann. Civ. St. Supp. 1918, art. 1521), relative to the jurisdiction of the Supreme Court, and providing the court shall have jurisdiction in any other case in which it is made to appear that an error of law has been committed by the Court of Civil Appeals of such importance to the jurisprudence of the state as in the opinion of the Supreme Court requires correction, the Supreme Court has no jurisdiction of writ of error to a Court of Civil Appeals in an action for failure of guaranty that cattle sold were immune from tick fever, brought against

a seller and its agents, where the claimed error of the Court of Civil Appeals was in holding admissible certain evidence of custom as to making such guaranties, the jury having found that the alleged guaranties were not made, and the decision of the point by the jury not having turned on the evidence of custom.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Action by W. E. Hartt against the Yturia Cattle Company and others. From judgment for defendants, plaintiff appealed to the Court of Civil Appeals, which affirmed (210 S. W. 612), and plaintiff brings error. Writ of error dismissed.

Templeton & Milam, of Fort Worth, for plaintiff in error.

B. K. Goree and McLean, Scott & McLean, all of Fort Worth, R. B. Creager, of Brownsville, and R. S. Garrett, of Fort Worth, for defendants in error.

POWELL, J. This is an action in damages, instituted in the district court of Tarrant county, Tex., by W. E. Hartt against the Yturia Cattle Company, the George R. Barse Live Stock Commission Company, and A. Cohn. The action is based upon the breach of an alleged contract of guaranty as well as alleged false and fraudulent representations made by Cohn to the agents of Hartt in the sale of certain cattle. The opinion of the Court of Civil Appeals, reported in 210 S. W. 612, contains a rather complete statement of the nature of the action, the pleadings filed, and the jury's verdict. We shall not, therefore, give any extended statement of that kind here, but will content ourselves with a brief survey of the case as more especially applicable to the question raised in the petition for writ of error filed in the Supreme Court.

The Yturia Cattle Company of Brownsville in December, 1915, shipped a car of cattle to the George R. Barse Live Stock Commission Company of Fort Worth, authorizing the consignee to sell the same on the usual commission and in the customary way. The commission company promptly undertook its task, and its agent, Cohn, was in charge of the sale. He went on the market and Stock Exchange, where he met one W. E. Young, who was acting as agent of W. E. Hartt in the purchase of certain cattle. The latter desired to send most of the cattle to his ranch near Lovelady, Houston county, Tex., which was in the so-called "tick belt." Early in the negotiations involving the purchase of the cattle the controversy arose as to whether or not the same were from the tick country and safe to be shipped into a similar section. Young admitted that the cattle appeared to be clean and free from ticks, and therefore doubted the advisability of the purchase. He testified, however, that Cohn represented them to be ticky cattle and safe, and that he would guarantee them to be safe for location in the ticky country. Hartt also testified that officers of the commission company made similar representations and guaranties to him. Cohn and the said officers were as vigorous in their denial that any such conversations ever occurred. At any rate, Young, acting for Hartt, purchased and paid for 134 head of said cattle. The commission company deducted its usual commission and remitted the net proceeds to the Yturia Cattle Company. Hartt shipped 90 of said cattle to Houston county. Shortly thereafter they all became afflicted with ticks and fever. Sixty-five of them died, involving an alleged loss of $2,860 to Hartt. The remaining 25 depreciated in value by reason of their suffering to the alleged extent of $500. Hartt claimed a still further damage of $300 incurred in having the cattle treated while they were down. He sued all three defendants for a total damage of $3,660. All the parties to the suit, as well as the witnesses, were experienced dealers in cattle, and especially on the Fort Worth Exchange.

The case was tried in the lower court before a jury and submitted on special issues. The jury answered all questions against the contention of plaintiff in error, including a finding that no representations or guaranties were made by defendant Cohn or the commission company as alleged by Hartt and Young. The court entered judgment for the defendants in error, and Hartt perfected his appeal to the Court of Civil Appeals, where the judgment of the lower court was duly affirmed. He then brought the case to the Supreme Court on writ of error.

It is admitted by all the parties that the controlling question on this appeal is whether or not testimony of custom on the Fort Worth Stockyards was admissible in evidence. As heretofore stated, the action was based upon an alleged express contract of guaranty, orally made, by Cohn and the commission company to Young and Hartt, and certain representations made in connection therewith. Hartt alleged that Cohn gave such guaranties, and that in so doing he was acting as agent of the Yturia Cattle Company and the Barse Live Stock Commission Company, and that each company had either expressly authorized him to do so, or that his action was in the apparent scope of his authority. Both companies denied the making of the statements by Cohn and said he never had any authority, express or implied, to make them, if he did. The Yturia Cattle Company pleaded that it did not know Cohn, that it had authorized the Barse Commission Company to market the cattle in the usual and customary way, that, if a sale was made in any other way, the commission company was liable to Hartt, and asked for judgment over against the said commission company, for such amount, if any, as Hartt might recover against the cattle company. The cattle company was permitted to prove, over the ob-

jection of counsel for Hartt, that it was irrelevant and immaterial, that it was not customary for commission companies or their salesmen on the Fort Worth yards to make such representations and guaranties as alleged by Hartt; that they never did so in fact. In overruling counsel's objection to this testimony, the trial court said it was admissible in any event on the issue of apparent scope of the agent's authority. Counsel for Hartt made no request of the court to limit the effect of such evidence.

The Court of Civil Appeals refused to commit itself definitely to the proposition that the evidence in question was admissible for all purposes, but held that it was undoubtedly admissible as bearing upon the issues involved between the cattle company and commission company on the cross-action filed by the former over against the latter.

We do not think the Supreme Court has jurisdiction of this case.

In the first place, the petition for writ of error sets up "grounds of jurisdiction" as follows:

"The case is one of which the jurisdiction of the Court of Civil Appeals is not final under article 1591 of the Revised Statutes of Texas, the amount sought to be recovered being in excess of $1,000. The Supreme Court has jurisdiction because, as your petitioner conceives and here avers, the Court of Civil Appeals in its decision herein rendered committed material error and made erroneous rulings upon questions of substantive law involved in the case, which were material to petitioner's cause of action, viz."

It is evident that counsel was complying with subdivision 6 of article 1521 of Vernon's Sayles' Revised Civil Statutes of Texas, known as the Act of 1913. However, on July 1, 1917, the latter act was superseded by the act of 1917 (Laws 1917, c. 75 [Vernon's Ann. Civ. St. Supp. 1918, art. 1521]). The new act reads in part as follows:

"In any other case in which it is made to appear that an error of law has been committed by the Court of Civil Appeals of such importance to the jurisprudence of the state, as in the opinion of the Supreme Court requires correction," etc.

The petition for writ of error in this case was filed in the Court of Civil Appeals February 17, 1919, and should have conformed to the act of 1917, as aforesaid. The failure so to do was doubtless due to an oversight on part of counsel, and we attach no importance to it. That matter is purely formal and technical. Considering the jurisdictional question upon its merits as shown by the petition for the writ in considerable detail, we still think the Supreme Court has no jurisdiction of this cause. The petition is confined solely to an attack upon the action of the trial court in admitting certain testimony. Now, what was the evidence in question and what was its importance or bearing upon the real question at issue? The action was based upon alleged representations and guaranties made by the seller to the purchaser. The jury found they were not made. That being true, the case was settled by that finding. The case did turn upon that point. But did the decision of that point by the jury turn upon the evidence of custom? We do not think it can be said that it did. There were three witnesses giving direct testimony that they were present, and no such statements or guaranties were made. On the other hand, there were three who gave direct evidence that they were present, and that said representations and guaranties were made. No rights were asserted by reason of the alleged custom; and the only purpose of the evidence of such custom was to discredit and cast a doubt upon the evidence that the agreement declared upon was made, and to corroborate the evidence that no such agreement was made. The evidence of custom was only a circumstance impeaching in its nature. It could only have operated as a circumstance to sustain the testimony of those who said the guaranties were not made. The various witnesses to the transaction were present before the jury, and the jurors doubtless decided the question at issue by observing these witneses and weighing their testimony. We think it would be unreasonable to say that the decision of this question turned upon this circumstantial and impeaching testimony involving custom. If we are correct in this view, then under the decision of the Supreme Court in the case of Smith v. Butcher, 223 S. W. 166, the said court is without jurisdiction of the case at bar, unless it extends its jurisdiction under the said act of 1917 to cover a wider range of cases than did the act of 1913. Chief Justice Phillips wrote the opinion in the case of Smith v. Butcher, supra, and said:

"That ruling relates purely to the admissibility of certain testimony. The case cannot be said to turn upon this testimony. A question of substantive law is not presented."

This authority has been reiterated in various decisions by the Commission of Appeals. We refer to the following: Slaton v. Bank of Plainview, 221 S. W. 955; Langford v. Newsom, 220 S. W. 544; Texas City Transportation Co. v. Winters, 222 S. W. 541.

It is true that the act of 1913 was being construed by the Supreme Court in the case of Smith v. Butcher, supra. We have not found any decision of said court construing the act of 1917 with special reference to assuming jurisdiction of evidence questions.

However, in the case of Decker v. Kirlicks (Sup.) 216 S. W. 385, Chief Justice Phillips, construing subdivision 6 of the act of 1917, speaks as follows:

"If we have jurisdiction to review this holding of the Court of Civil Appeals, it is in virtue of subdivision 6 of article 1521 as amended

by the act of 1917 (chapter 75), by which the appellate jurisdiction of the Supreme Court is now governed; that is, it must appear that the ruling constitutes 'an error of law * * * of such importance to the jurisprudence of the state as in the opinion of the Supreme Court requires correction.' The amendment of this subdivision by the act of 1917 was plainly intended to further limit the jurisdiction of the Supreme Court as conferred by the act of 1913. Whether the Court of Civil Appeals 'has erroneously declared the substantive law of the case' is no longer the test as applied to cases falling within the subdivision. The amendment declares, in effect, that it is not enough that the error of law be obvious, in the opinion of the Supreme Court, nor that it be of importance to the aggrieved party, nor that its correction be necessary in the view of the Supreme Court to prevent an injustice in the immediate case, nor even that it be 'of importance' to the jurisprudence of the state. For the Supreme Court to be invested with the power to revise the ruling, it is required that it amount to an error of law 'of such importance' to the jurisprudence of the state as in the opinion of the court requires correction. This clearly presupposes a ruling of such erroneous consequence as, if permitted to stand, would constitute a serious departure from the established law or introduce a doctrine violative of fundamental principles. "Whatever may be the difficulties of its administration, this is the theory and plain meaning of the amendment. It is the written law, and our duty is to give it effect."

It is true that the act of 1917 does not specifically provide that the error of law must be one of substantive law in order to be subject to review by the Supreme Court, but it does provide many restrictions that were absent in the act of 1913. In fact, the Legislature has given to the Supreme Court a large measure of discretion in determining its own jurisdiction in this connection. As we interpret the rule laid down in Decker v. Kirlicks, supra, it is the view of the Supreme Court that an error of law must, at least, rise to the dignity of being one of substantive law, before being subject to review and correction by said court. Not only that, but not all errors even of substantive law are now within its jurisdiction.

The Supreme Court having stated in the case just above mentioned that, in its view, it was the intention of the Legislature in passing the act of 1917 to further limit and restrict its jurisdiction, we do not think the Supreme Court would, in any event, depart from its opinion in Smith v. Butcher, supra, in such a way as to enlarge its jurisdiction of cases involving only the admissibility of testimony.

It follows from what has been said that we think the Supreme Court is without jurisdiction of this cause, and that it should be dismissed for that reason, and we so recommend.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

---

⬖For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes