542

**DALLAS RY. & TERMINAL CO. v. GARNER et ux.**

No. 1450—6121.

Commission of Appeals of Texas, Section B.

Oct. 18, 1933.

Worsham, Rollins, Burford, Ryburn & Hincks and Allen Charlton, all of Dallas, for plaintiff in error.

Willis & Madden, of Dallas, for defendants in error.

LEDDY, Judge.

This action was one for damages for personal injuries alleged to have been sustained by defendant in error Mrs. C. F. Garner as the result of a collision between one of plaintiff in error's street cars and a motortruck.

It appears from the evidence adduced upon the hearing of the motion for a new trial that, when the jury reached the issue as to the amount of damages sustained by defendant in error, the views of its members were widely divergent as to what answer to make to the question embodying such issue. It seems that the different jurors varied in amounts from $900 to $7,500 on this issue.

The foreman of the jury was introduced as a witness by defendants in error. With reference to what occurred after the jury became deadlocked on the issue of damages he testified:

"When we got down to the question of amount, the jury was wide apart, and we didn't think we could get together by just a discussion.

"It was my understanding that the Court had told us if we couldn't get together otherwise, then to take a ballot, by lot.

"I told the gentlemen of the jury *that as the Court had instructed us to do that*, that I thought we all ought to put down what we thought was right, add it up and divide by twelve; I told them I thought that was the only way we could get it. We tried the other way and it didn't look like we could reach an amount, and I told them the Court had suggested that we use this method if we couldn't reach·it the other way. I expect I did ask the other jurors if that was all right to do it that way. And each juror put down an amount and I divided by twelve, and I put to a vote the amount I got. We did not write down the vote. I just asked them orally, 'Gentlemen, is this amount all right' and nobody objected. I was satisfied with the verdict. That represented close to the amount that I wanted all the time; that was just about it; some of them were higher and some lower. * * *

"As to whether it never would have occurred to me to use this lot method, if I hadn't thought the Court told us that was the way, that is the way I understood it. I thought he said, 'if you can't agree, then do it this way.' ".

One of the jurors, W. C. Broyles, was introduced by the plaintiff in error. As to what occurred while the jury was considering the issue of damages he testified:

"* * * Some of them were pretty far apart, high and low, so they just went to

work and figured the twelve together and then divided them. The foreman suggested that method of arriving at it. Nobody objected to it.

"After we got this answer, after putting down the amounts and dividing by twelve and getting the answer, we turned it over to the Boss there and he figured it. He put it in the answer in the charge. That was the foreman. There was no discussion had at that time, after we found out what it was, whether we would use it as the answer or not.

"As to our understanding of what the Court told us in the charge, well, that is the way with it. We done that way.

"Q. You understood the Court to tell you— A. If they couldn't get together.

"Q. If you couldn't agree on the amount, to arrive at it in that way? A. Yes."

C. Gano, another juror, testified as to what occurred on this subject as follows:

" * * * Everyone thought his amount was what ought to be given. There was a little trouble about the amounts. We couldn't get together about the amount, and somebody suggested that we write down what each one wants, divide it by twelve and see what that is.

"Q. You didn't say, and nobody else said, whatever that is, that is what we are going to turn in: If that had been one hundred thousand dollars, you wouldn't have agreed to it, would you? A. Well, from the way we were figuring there, I don't know just exactly whether it was brought in that way, but my understanding was that when we figured these out, added together and divided by twelve, that was to be our conclusion."

In connection with the issue of damages the trial court instructed the jury as follows: "You are further instructed that in consideration of Special Issues Numbers 44 and 45 you will not agree among yourselves to answer the same by lot. That is, by adding up certain sums and dividing the total by twelve."

Defendants in error insist that no misconduct was shown for the following reasons:

1. Because there was testimony which justified the court in finding that the jurors did not agree to be bound by the result of dividing the total sum by twelve.

2. Because after the total amount favored by the jurors had been divided by twelve all of the jurors expressly consented to and acquiesced in the amount found.

3. Because the jurors' testimony will not be heard to impeach their verdict by showing that they did not understand or misapplied the charge of the court.

In our opinion the action of the foreman of the jury constituted such misconduct as requires a reversal of this case.

It appears that the jury, after answering all questions upon the issue of liability, were widely variant in their views as to the amount of the damages sustained by defendant in error. In this situation the foreman stated to the jurors that the court had instructed them, in the event they could not agree as to the amount of damages, to ascertain the amount by lot; that is, by adding the amount each juror favored and dividing the total sum by twelve. After the foreman made this statement with reference to the instruction of the court, the suggested method was followed, and the exact amount arrived at by lot was returned as answer to the question which sought to ascertain the amount of damages sustained by defendant in error.

We think it clear that the foreman's statement as to the court's instruction was reasonably calculated to influence the jurors to agree to a quotient verdict. In fact, the record affirmatively shows from the testimony of the juror Gano that it did influence him to agree to a verdict arrived at by this plan.

Defendants in error seem to labor under a misapprehension as to the real basis for the contention that the verdict is tainted with misconduct. The vice in the verdict is not that an agreement was made in advance by the members of the jury to be bound by the result of the quotient method, but that the jurors in acquiescing in the amount arrived at were doing so under the influence of the misleading and untrue statement of the foreman that the court had instructed the jury to use this particular method in arriving at the amount of damages. Each juror had taken an oath to try the case according to the law as given in charge by the court and the evidence adduced under the rulings of the court. If the jurors believed the statement of the foreman that the court had instructed them to use this particular method, naturally they would assume it was their duty not only to adopt the suggested plan, but to accept the result of its operation.

The act of the foreman of the jury in stating that the court had instructed the jury to use the lot method, if they could not otherwise agree, in arriving at a verdict, was expressly contrary to the court's instruction upon this subject, and unquestionably constituted an overt act of misconduct. When misconduct was thus shown, it was permissible to inquire into the effect of the same upon the minds of the jurors. Bradley v. Texas & Pacific Ry. Co. (Tex. Com. App.) 1 S.W.(2d) 861.

Since the foreman's misconduct was of a nature reasonably calculated to influence the action of the jury in rendering a verdict, the burden rested upon the defendants in error to show beyond a reasonable doubt that such misconduct did not operate to influence

improperly the jurors in arriving at their verdict. Casstevens v. T. & P. Ry. Co., 119 Tex. 456, 32 S.W.(2d) 637, 638, 73 A. L. R. 89; Houston & T. C. Ry. Co. v. Gray, 105 Tex. 43, 143 S. W. 606; Gulf, C. & S. F. Ry. Co. v. Harvey (Tex. Com. App.) 276 S. W. 896.

■ We are not left to the domain of speculation as to whether the misconduct complained of influenced any of the jurors. This affirmatively appears from the testimony of Mr. Gano, wherein he states that under the circumstances he felt it was his duty as a juror to accept whatever amount was arrived at as a result of the determination of the verdict by lot. Moreover, the record is devoid of evidence showing the effect of this misconduct on the remaining nine jurors, as none of them were called to testify on the hearing of the motion for a new trial.

■ In deciding the issue of damages the jurors were placed in the same position as would have been the case had the court instructed them that if they could not otherwise agree on the amount of damages to be awarded defendants in error they should arrive at the same by lot. Under such an instruction each juror would in all reasonable probability have felt obligated to abide by the amount of damages resulting from the lot method. The immediate acceptance of the lot method after the foreman's statement strongly indicates that the jurors believed the statement of the foreman that the court had given such an instruction. It must therefore be assumed that the foreman's statement had the same effect as if the jury had been specifically instructed to arrive at the amount of damages by the lot method.

■ Plaintiff in error also complains of improper arguments made to the jury by counsel for defendants in error. The argument that the burden of proof was upon plaintiff in error to show that Mrs. Garner was not injured, and also the argument to the effect that the jury did not know whether a witness who had testified by deposition in behalf of plaintiff in error was a Negro or a Chinaman, was unquestionably improper. In view of the reversal on account of misconduct of the jury it is not necessary to decide whether such argument would of itself constitute reversible error. Argument of this character should not be repeated upon another trial of the case.

We recommend that the judgments of the Court of Civil Appeals and of the district court be reversed, and the cause remanded for another trial.

CURETON, Chief Justice.

Judgments of the district court and Court of Civil Appeals reversed, and cause remanded to the district court.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.