AUTRY et al. v. DALLAS RAILWAY & TERMINAL CO.

No. 13440.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 30, 1936.

Rehearing Denied Nov. 27, 1936.

Hughes & Monroe, P. P. Ballowe, and Lee T. Johnson, Jr., all of Dallas, for appellants.

Worsham, Burford, Ryburn & Hincks, of Dallas, for appellee.

BROWN, Justice.

Appellants, Hubert Autry and Mrs. Marinie Record Stegall, surviving husband and mother, respectively, of Mrs. Viola Autry, deceased, brought this suit against appellee, Dallas Railway & Terminal Company, for damages growing out of the death of Viola Autry. She was killed while driving her automobile, same being struck by appellee's street car at the intersection of Center street and Zang boulevard in the city of Dallas, Dallas county, Tex. Mrs. Autry was driving west on Center street and the street car was going north on Zang boulevard.

Appellants pleaded negligence on the part of the motorman in charge of appellee's street car as follows: (1) His failure to keep a proper lookout for the deceased and her automobile; that he had a clear vision of the approaching automobile for approximately 50 feet prior to the time the street car reached the point of intersection of the two streets; (2) failure to keep the street car under control; (3) the operation of the street car at a greater speed than 20 miles per hour; (4) the operation of the street car at a rate of speed which was unreasonable under the surrounding circumstances then existing; (5) failure on the part of the motorman to sound his gong or bell as he approached the intersection of the two streets; '(6) discovered peril, and other facts of negligence which will not be noticed because of the instructions given the jury and the assignments of error presented to us.

Appellee answered, denying liability and specifically pleading contributory negligence on the part of Mrs. Autry, as well as the defense of unavoidable accident.

The cause being tried to a jury, the case was submitted on special issues.

Appellants requested the court to submit the issues covering discovered peril, which were refused.

The jury found as follows: (1) That the street car was not being operated at a greater rate of speed than was reasonable at the time and place in question; (2) that the motorman did not fail to sound his gong as the street car approached the intersection of the two streets; (3) that the motorman failed to exercise ordinary care to keep a lookout for the automobile driven by Mrs. Autry immediately prior to the collision; (4) that such failure proximately caused the death of Mrs. Autry and the damages sustained; (5) that appellant Hubert Autry

sustained financial injury by reason of the death of his wife; (6) the sum of $5,082.-50; (7) that Mrs. Stegall suffered financial loss by reason of Mrs. Autry's death; (8) the sum of money found was $500; (9) that Mrs. Autry consciously suffered physical pain and mental suffering between the time of her injury and prior to her death; (10) the amount awarded for such suffering being $250; (11) that Mrs. Autry did not fail to exercise ordinary care to keep a lookout for the street car; (12) that Mrs. Autry did not fail to exercise ordinary care for her own safety in respect to listening for the approach of the street car; (13) that while approaching and in the immediate vicinity of the intersection of the two said streets, Mrs. Autry operated her automobile at a rate of speed in excess of 20 miles an hour; (14) that the operation of the automobile at such rate of speed proximately caused, or contributed to cause, the collision; (15) that Mrs. Autry did not fail to sound an effective signal as she approached the intersection of the two streets; (16) that Mrs. Autry failed to exercise ordinary care for her own safety in respect to the rate of speed at which she drove her automobile at the time of approaching the street car tracks and in the immediate vicinity thereof; (17) that Mrs. Autry's failure to exercise ordinary care in such respect proximately caused, or contributed to cause, the collision; (18) that Mrs. Autry did not fail to exercise ordinary care for her own safety in not turning her automobile to the right and in not proceeding northward on Zang boulevard; (20) that Mrs. Autry did not fail to exercise ordinary care in the manner of applying the brakes of her car in approaching the street car tracks; (21) that the collision was not the result of an unavoidable accident.

Having received this verdict, the trial court rendered judgment that appellants, who were plaintiffs below, recover nothing as against appellee. An appeal was perfected from this judgment to the Court of Civil Appeals for the Fifth district at Dallas and was by the Supreme Court transferred to this court.

There are five assignments of error brought forward in appellants' brief. The first assignment of error complains of the trial court not sustaining appellants' exception and objection to the court's charge, to the effect that the court failed to submit to the jury charges on the issue of discovered peril. And the second assignment of error complains of the trial court's refusal to sub-

mit to the jury the special charges requested by the appellants on the issue of discovered peril.

Paragraph I of appellants' exceptions and objections to the court's charge is as follows:

"Plaintiff objects and excepts to the court's charge, for the reason that the court should submit to the jury the issues on discovered peril heretofore tendered to the court for submission; that the issue of discovered peril is raised both by the pleadings and evidence in the case, and, in view of the defense of contributory negligence urged by defendant, the submission of discovered peril to the jury is indispensible to the establishment of plaintiff's right to judgment in the event of an adverse finding on the issue of contributory negligence."

Viewing the case as we do, we shall not attempt to pass upon the question whether or not appellants are entitled to both of the assignments of error above mentioned, that is to say, whether or not the record justifies appellants' position in presenting an assignment of error to the failure of the court to charge the jury on the issue of discovered peril and an assignment of error to the refusal of the court to give the issues covering discovered peril which were actually presented to the trial court by the appellants. We do not pass upon these matters because we do not find evidence in the record sufficient to raise the issue of discovered peril.

■ As was said by this court in Shannon v. Horn, 92 S.W.(2d) 1090, in which we attempted to review and cited a number of authorities, it is not sufficient to show that the defendant or his agent could have discovered the perilous position of the injured party or ought to have discovered such perilous position. The evidence must be such that reasonable minds may be able to deduce therefrom the fact that the defendant or his agent actually discovered the perilous position of the injured party, and a recovery can only be had by finding that the defendant or his agent was guilty of negligence in not employing all of the means at his hands, consistent with his own safety and the safety of his vehicle and the passengers, if any therein, after such discovery.

In the case before us, the collision occurred at approximately midday; appellee's motorman admits that he saw Mrs. Autry coming west on Center street, approaching Zang boulevard, on which he was operating the street car, just as he slowed the street car down and reached the intersection of the two streets, and that Mrs. Autry's automobile was approximately 75 feet from the intersection. He further testified that he then looked to his left for the purpose of ascertaining whether or not any person or vehicle was approaching this intersection from the west, and that then he proceeded with the street car across the intersection of the two streets and did not see Mrs. Autry's automobile again until just before the collision occurred. In attempting to estimate the space of time elapsing between the time he saw the automobile and the unfortunate collision, he gives the intervening time as five or six seconds, but testified that the collision occurred instantly after he saw the automobile the last time. He further testified that the front end of the street car was about 2 feet north of the north line of the intersection of the two streets when the impact occurred; that in the short time given to him, he attempted to stop the street car by shutting off the current and putting on the air brakes; and that the street car stopped when its rear end was about 4 feet south of the north line of the intersection, and that the street car was about 50 feet long.

The jury found that immediately prior to the collision Mrs. Autry was driving her automobile at a speed of more than 20 miles per hour. If she were driving her car at the rate of only 20 miles per hour, it traveled 29⅓ feet each second, and in two seconds it traveled 58⅔ feet, and in three seconds it traveled 88 feet. The motorman testified that he did not know at what rate of speed Mrs. Autry was driving her automobile, and shows that he paid no particular attention to the kind of automobile she drove, how fast she was driving, or in what portion of the street she was traveling when he first saw her.

■■ It is a matter of common knowledge that a street car can only travel on the iron rails laid for its use and operation, and that an automobile can use at will any part of the street. It is further a matter of common knowledge that, traveling at a reasonable rate of speed, an automobile can be stopped in a shorter space of time and in a shorter distance than a heavy street car, which is operated at the same rate of speed. Searching the record as we have, we do not find any evidence or testimony which tends to establish any fact or circumstance showing that appellee's motorman discov-

257

ered the perilous position of Mrs. Autry in time to have avoided the collision. The assignments of error directed to the failure of the court to submit such issue are not well taken.

The third assignment of error is to the effect that there was misconduct of the jury, in that a majority of the jurors did not know the effect of their answers to the issues covering contributory negligence on the part of Mrs. Autry, and that some of the jurors prevailed upon others to join in affirmative answers to such issues, stating that no harm would be done, and that the plaintiffs would be entitled to the amounts fixed in the verdict. This matter was threshed out before the trial court and the record discloses that only two jurors attempted to testify to anything tending to support this contention. One of these jurors testified that he was perfectly satisfied with the answers found to the issues until he learned they defeated a recovery for the plaintiffs, and that he got this information three or four days after the verdict was returned. All of the jurors who testified on the hearing of the motion for new trial denied emphatically that any such discussion was had or any such misconduct was indulged in, excepting the two jurors above mentioned.

In the case of St. Louis, B. & M. Ry. Co. v. Cole, 14 S.W.(2d) 1024, 1025, by the Commission of Appeals, a similar situation arose and the Commission of Appeals used the following language:

"The trial court, in overruling the motion for new trial, made no express finding on this conflicting evidence. In deference to this ruling, we must indulge the presumption that the court accepted the version given by the jurors who testified that the particular misconduct complained of did not occur."

We believe that the assignment of error is not well taken.

We find an assignment of error to the effect that there was misconduct of the jury because a member thereof, a minister of the gospel, led the jurors in prayer, beseeching Divine guidance in answering the issues, and that it was only after prayer that the members of the jury favorable to the plaintiffs on the issues of contributory negligence were induced by prayer to return the answers that were returned on such issues, and the contention is made that where a jury is under oath to carefully consider the evidence and the weight to be given the testimony of the witnesses, it is misconduct to seek Divine guidance in the premises. We are of the opinion that this could not be reversible error, and are of the further opinion that if more petit juries prayed for Divine guidance before returning their verdict, more verdicts would be returned in consonance with the Divine law; and it is manifest to those who think that every valid law is the direct outgrowth of the Divine law. It is assuredly difficult for us to conceive how prayer for Divine guidance in the consideration of the issues involved in the trial of a case in a jury room could materially injure any party litigant. It is established that the misconduct complained of must be material. Article 2234, Rev.Civ.Statutes.

The assignments of error are overruled and the judgment of the trial court is affirmed.