**SPROLES MOTOR FREIGHT LINES, Inc., et al., v. JUGE.**

No. 13828.

Court of Civil Appeals of Texas.
Fort Worth.

Nov. 18, 1938.

Rehearing Denied Jan. 20, 1939.

920

Massingill & Belew, Homa S. Hill, Burton B. Paddock, Rawlings & Sayers, and Nelson Scurlock, all of Fort Worth, for appellants.

L. W. Dumas, Bryan, Stone, Wade & Agerton, and Oliver W. Fannin, all of Fort Worth, for appellee.

SPEER, Justice.

Julia Maud Juge instituted this suit in one of the district courts of Tarrant County against Roy Davis and Sproles Motor Freight Lines, Inc., for damages growing out of an injury sustained by her when Davis, the agent and driver of one of his co-defendant's trucks, backed a truck adjacent to a sidewalk and caught plaintiff's arm between the truck and a utility pole, breaking her arm.

The parties will carry the designation of plaintiff and defendants, respectively, except when it becomes necessary to discuss particular acts of the respective defendants, and then they will be referred to by name.

Plaintiff alleges that immediately prior to the time she was injured, she was standing on the sidewalk in the downtown district of the City of Fort Worth, at the usual and customary place used by pedestrians waiting to catch a passenger bus, to go home. That Davis, the driver of the truck, backed it to the sidewalk to unload merchandise, and, in doing so, was negligent in the following particulars: (a) In failing to keep a lookout for plaintiff and others situated as she was; (b) in failing to give a signal of any kind, indicating his intention to so back the truck to that position; (c) in failing to keep and maintain some other person at or near the rear of the truck, to give warning to those in danger; (d) in violating certain ordinances of the City of Fort Worth, with reference to backing vehicles on and along the streets; and (e) in backing the truck at an angle to the curb so that the rear end of the body of the truck would project over and onto the sidewalk where plaintiff and other pedestrians were and had a right to be.

Allegations were made of the resultant injury to plaintiff, its permanency, her reasonable and necessary expenses incurred, her loss of time and earnings, pain and suffering.

The defendants answered with general denials and allegations of contributory negligence on the part of the plaintiff, proximately causing her injuries.

The case was tried to a jury on special issues, all of which were answered favorably to plaintiff, and judgment was entered accordingly. New trial was denied, and this appeal was perfected by the defendants.

Error is assigned, challenging the manner in which the issue of unavoidable accident was submitted; in permitting the introduction in evidence of á statement made by Davis two days after the accident; misconduct of the jury in discussing during their deliberation the probability of plaintiff having to pay a portion of the amount awarded as attorneys' fees; because the verdict and judgment were excessive and not supported by the testimony; and because the court improperly submitted by special issue the measure of damages.

■ The first assignment of error raises the much debated issue on "unavoidable accident". Many have been the comments and criticisms of the manner in which courts have sought to have juries determine that inquiry. The difference of opinions among trial lawyers on the subject is no more confusing than those expressed by the appellate courts. All agree that a definition of unavoidable accident should be given, substantially, to the effect that the incident complained of was an event which occurred without the negligence of either the plaintiff or defendant. It is equally well settled that the burden of proof is on the plaintiff to show by a preponderance of the evidence that the event complained of was not the result of an unavoidable accident. By the inquiry in form of a special issue, the court seeks to ascertain from the jury whether plaintiff has established by a preponderance of the evidence that the incident or event claimed to have caused his damages was not an unavoidable accident. If the issue is raised by the evidence, the plaintiff must show by a preponderance of the evidence that it was not the result of an unavoidable accident; otherwise, he cannot recover.

■ Article 2190, R.C.S., Vernon's Ann.Civ.St. art. 2190, requires the court to submit all issues made by the pleadings and evidence. In cases such as this, where plaintiff's action is based upon negligence of the defendant, and defendant relies upon the contributory negligence of the plaintiff, and both the offensive and defensive matters are properly submitted to the jury, it is sometimes difficult to see how the issue of unavoidable accident could become material; for, as we have seen, that condition arises only when the event is the result of an act not caused by the negligence of either party. However, our courts have held that the general denial by defendant puts in issue the matter of unavoidable accident (Colorado & S. R. Co. v. Rowe, Tex.Com.App., 238 S.W. 908) and, under this rule, if the evidence raises the point, it must be submitted to the jury. Here, we have the plaintiff with an indisputable injury. To recover against the defendants for her damages, she must procure a jury finding that they proximately resulted from the negligent acts of defendants, and further, that her injuries did not result from an unavoidable accident, i. e., one that was not the result of negligence upon the part of either party.

In Speer's Special Issues, sect. 137, decisions by the courts of this State are cited, supporting the rule that where the issue of unavoidable accident is raised by the evidence, the issue should be submitted to the jury, even though it is comprehended in the major issue of defendant's negligence. It is there said, in effect, that it is a part of plaintiff's case to show that there was no unavoidable accident. To establish this negative by an affirmative answer, and its converse by a negative answer, has brought about the confusion among litigants, as well as the courts.

In the instant case, special issue No. 16 reads: "Do you find from a preponderance of the evidence that the accident in question was not an unavoidable accident, as that term is herein defined? Your answer to this question will be either: (a) 'It was not an unavoidable accident', or (b) 'It was an unavoidable accident.'" The answer made by the jury was: "It was not an unavoidable accident."

The objections made to the issue before its submission, as well as those raised in the motion for new trial, were, in substance, that the issue and its alternative answers proposed fail to place the burden of proof upon the plaintiff, to show by a preponderance of the evidence that the accident was not the result of an unavoidable accident; and, further, that if the jury should find the evidence was evenly balanced, it would not be authorized to find from a preponderance of the evidence that the accident was not the result of an

unavoidable accident; that, as framed, the issue required the defendant to prove by a preponderance of the evidence that the accident was unavoidable.

The cases of McClelland v. Mounger, Tex.Civ.App., 107 S.W.2d 901, writ dismissed; S. Blickman, Inc. v. Chilton, Tex.Civ.App., 114 S.W.2d 646; and Fidelity & Casualty Co. v. Van Arsdale, Tex.Civ.App., 108 S.W.2d 550, writ dismissed, support the contentions of appellants. While cases of Three States Tel. Co. v. Kirkwood, Tex.Civ.App., 61 S.W.2d 568; City of Beaumont v. Murphy, Tex.Civ.App., 107 S.W.2d 468, writ dismissed; Traders & Gen. Ins. Co. v. Snow, Tex.Civ.App., 114 S.W.2d 682, writ dismissed; and Traders &. Gen. Ins. Co. v. Burns, Tex.Civ.App., 118 S.W.2d 391, writ dismissed upon request of all parties, hold the issue as submitted in this case was proper. The Burns Case, supra, by this court, was not an unavoidable accident case, but involved the same principle here under discussion.

When this case was tried, in November, 1937, the last expression by the Supreme Court on the subject of the proper manner in which to submit the issue of unavoidable accident is to be found in the case of Southern Ice & Utilities Co. v. Richardson, 128 Tex. 82, 95 S.W.2d 956. In that case, the court recognized the confusion which has from time to time arisen, in requiring jurors to answer questions put in a negative form, and suggested as a remedy that the trial courts require answers in the form prescribed by the trial court in this case; that is, either that " 'It was due to an unavoidable accident,' or, 'It was not due to an unavoidable accident.' " [page 958.]

Referring to the Richardson Case, supra, the court in the Snow Case, supra, 114 S.W.2d 687, aptly said: "This well-considered advice intended for the guidance of the trial court in that case, approved as it was by the Supreme Court when it adopted the opinion, thus making it binding upon trial and intermediate appellate courts, may not be questioned by us." Certainly no blame can be attached to the trial court in this case for having followed the counsel of our Supreme Court; he only performed his duty, irrespective of the irreconcilable conflicts on the point of law asserted by the several Courts of Civil Appeals, hereinabove pointed out.

Subsequent to the trial of this case below, our Supreme Court decided Gulf, C. & S. F. R. Co. v. Giun, 116 S.W.2d 693, 116 A.L.R. 795. There the issue of unavoidable accident, and its alternative answers asked, were in this language [page 695]: "Do you find from a preponderance of the evidence that the deceased's death was not the result of the (an) unavoidable accident, as that term is defined in defendant's Requested Charge Number 17? Answer 'Yes' or 'No.' Answer: 'No.' " The objection urged was that the question, as put, was calculated to confuse the jury because it contains a double negative and requires a single affirmative word to indicate a negative answer and a negative word to indicate an affirmative answer. In passing on the assignment, the court said:

"We cannot condemn as erroneous the form of submission used. There is no more confusion incident to answering the question in the manner directed in the charge than is incident to refuting any fact inquired about in double negative form. * * * 'The question requires careful consideration but is not one that requires expert knowledge of any kind, or more than average intelligence, in order to express by 'yes' or 'no' the jury's intended finding. It is possible for the reverse of the intended answer to be given if there is a lack of due consideration of the issue on the part of the jury. We cannot assume the jury did not perform its duty. * * * The trial court did not err in submitting the issue in the manner pointed out. It is not necessary, of course, that the jury be instructed to answer the question by a single affirmative or a single negative, and is suggested that it is conducive to certainty that the answer will be expressed in accordance with the actual finding made, to instruct the jury that in the event its finding is in the affirmative the form of the answer should be, 'It was not an unavoidable accident'; and that 'otherwise, the answer should be "no." ' * * * The suggested instruction is an improvement over that made in Southern Ice & Utilities Co. v. Richardson, 128 Tex. 82, 95 S.W.2d 956, in that it is not subject to the construction that it in effect withdraws the instruction as to burden of proof which is correctly placed on plaintiff by the form of the question."

As indicated by the court, in the opinion from which we have just quoted, we do not think it is difficult for the trial court to understand what the jury meant when it said in its verdict: "It was not an unavoidable accident." There was only one

question asked, and its answer was to be based upon the preponderance of the evidence. Until a simplified form of submitting both the affirmative and the negative of the question involved in the expression "unavoidable accident", with necessary application of the rule as to burden of proof, has been prescribed, we think the confusion will continue to exist. We shall not, at this time, attempt to suggest that form of remedy, since our Supreme Court has spoken in the language indicated. We think the instant case is well within the rules prescribed by the Supreme Court, and that no error has been shown, and we therefore overrule the assignment of error.

The second assignment by defendant, Sproles Motor Freight Lines, Inc., to which we shall refer, for convenience, as Sproles, complains of the admission in evidence over its objection of a statement made in writing by Roy Davis, on Monday after the accident happened on Saturday, in which Davis said: "I was backing into a safety zone and was watching the rear of my truck through my rear view mirror."

■ The testimony objected to came when Davis was called upon to read the statement made by him and to identify it as such. No objection was made by Davis; neither did he deny using the language; but, as stated, the objection was by the other defendant, Sproles. The substance of the objection made was: That the statement was not binding on it; it is hearsay, and not a part of the res gestae; Davis, as its agent, had no right to make such a statement and bind it thereby; because the statement has in it a term which has a legal meaning (referring to the term "safety zone"). The objection was overruled, the testimony admitted and exception taken.

The statement was clearly admissible as against the defendant, Davis, it being a declaration against interest. It was improper to exclude the testimony solely upon the objections made by Sproles. It does not appear anywhere in the record that any effort was made by Sproles, either at the time of the admission of the testimony or subsequently by motion or request, to have the testimony limited to the effect it might have on Davis. Whether or not the testimony was detrimental to the rights of Sproles would depend largely upon whether or not that defendant came within the class for whose benefit the zone was created; but we shall treat it as did Sproles, that it was damaging to it.

Because of the nature of the objections made, and in the absence of any effort on the part of Sproles to have the effect of the testimony limited, to plaintiff's action against Davis, we think no reversible error is shown.

■ The rule applicable to our conclusions thus reached is stated in 3 Tex.Jur., pp. 192, 193, sect. 129, where it is said: "If proffered testimony is admissible with respect to any existent issue, it may not rightly be excluded because it is not admissible on all issues; the objecting party must at the time of admission, or later by special charge or motion, request its limitation. Thus if a party desires that certain testimony shall be limited merely to impeachment purposes it is his duty so to request at the time of its admission or later by motion or charge. In the absence of such a request he may not complain on appeal that the trial court was not more vigilant on his behalf than he was. And again, if testimony is admissible against only one of several parties it is the duty of the others to request a charge properly limiting consideration of the testimony to such party." We also refer to the authorities there cited.

In Armour & Co. v. Tomlin, Tex.Civ. App., 42 S.W.2d 634, affirmed by Supreme Court in 60 S.W.2d 204, although the point here under consideration was not referred to by the latter court, Tomlin had sued Armour & Co. and one Wise, a truck driver, for damages growing out of a collision. Plaintiff was permitted to testify that Wise told her at the time it was all his fault; Armour objected to the testimony as was done in this case, and the court held it was unnecessary to determine if the statement constituted a part of the res gestae, "because it was clearly admissible against the witness Wise as a party defendant in the suit. No request to limit its consideration is shown. The action of the court so complained of does not constitute reversible error." [page 638.] Several authorities are there cited by the court to which we also refer. Other authorities of like holdings are City of Magnolia Park v. Crooker, Tex.Civ.App., 252 S.W. 341, writ dismissed; Hartt v. Yturria Cattle Co., Tex.Civ.App., 210 S.W. 612, writ dismissed, Hartt v. Yturia Cattle Co.,

924

Tex.Com.App., 228 S.W. 551; Behringer v. South Plains Coaches, Inc., Tex.Com. App., 13 S.W.2d 334. Many authorities are cited therein, in support of the rule announced in the foregoing cases.

Defendants have cited several cases in their brief, in support of their contentions, but none of them announces a different rule to that above stated. In no cases cited by them did the court have under consideration the admissibility of evidence which was admissible on some issue or against some party to the suit, and a refusal by the court to limit the testimony to the issue or the party to which it was applicable. For this reason they are clearly distinguishable from those supporting the principle above announced.

The third assignment of error raises the question of misconduct of the jury. It is claimed that while the jury was deliberating on its verdict some one who was holding out for a larger sum than others said that half or more of the amount plaintiff recovered would go to her lawyers, and that after such remark was made, at least one juror raised the amount he had previously voted to award and practically doubled it, when the final verdict was agreed upon. As a matter of course this matter arose on motion for new trial, heard by the court.

Three of the jurors were summoned and testified before the court on that hearing. The witness, Guthrie, testified substantially, that during their deliberations, and while they were trying to arrive at the amount of damages to be awarded, one of the jurors, who was holding out for a large sum, said that about half or more would have to be paid for lawyers' fees; the juror testifying said that previous to that remark he had voted for $2,700, which amount did not include about $1,300 which it seems they had practically agreed upon for certain items; that he thereafter raised his vote until the total amount of $6,328.33 was finally agreed upon. A fair deduction from his testimony is that he raised his vote from $2,700 to a little more than $5,000. The juror, Guthrie, further testified that when the remark about attorneys' fees was made, the foreman promptly warned them that that matter was not to be brought up in the case, and that they were not deciding that question. Mr. Guthrie further testified that he did not consider the remark as to attorneys' fees at all.

Another juror, S. H. Woolsey, was called as a witness, upon the hearing, and he testified that no such remark as testified to by Mr. Guthrie, concerning attorneys' fees, was made; he said nothing like that was said or mentioned; that he was right there in the small jury room where they were all together, and if any such remark had been made he certainly would have heard it.

A third juror, W. A. Jackson, testified that he did not hear any such statement, or any reference made to attorneys' fees; if such was made he did not hear it.

No other members of the panel were called to testify. The court having heard the testimony offered, overruled the motion for new trial, without making any express reference to the controverted facts raised.

By the motion for new trial there was raised a question of fact, as to whether the alleged misconduct took place. Traders & Gen. Ins. Co. v. Lincecum, 130 Tex. 220, 107 S.W.2d 585. In such hearing, the trial court is the judge of the credibility of the witnesses and the weight to be given their testimony. Wichita Falls & S. R. Co. v. Holbrook, Tex. Civ.App., 50 S.W.2d 428, affirmed in 125 Tex. 184, 78 S.W.2d 938. The trial court, in passing upon the facts raised by the testimony offered, had the same latitude given to jurors in passing upon fact issues while trying an original cause of action; they may believe some and disbelieve others who testify to the contrary; this is their privilege and function; a trial court passing upon fact issues in motions for new trials has identically the same duty and privilege. Bradley v. Texas & P. R. Co., Tex.Com.App., 1 S.W.2d 861; St. Louis B. & M. R. Co. v. Cole, Tex.Com.App., 14 S.W.2d 1024.

It is a settled rule of law in this State that in such controversies as the one here under consideration, that when the court, as a trier of facts on such motion, overrules it without express comment as to whether or not the facts complained of took place, it will be presumed he found they did not happen. If there is substantial evidence to support the presumptive finding, an appellate court will not disturb it. Autry v. Dallas Ry. & Terminal Co., Tex.Civ.App., 98 S.W.2d 254, writ dismissed; St. Louis B. & M. R. Co. v. Cole et al., supra; Wichita Falls & S. R. Co. v. Holbrook, supra; Bradley v. Texas & P. R. Co., supra, and authorities cited in each.

To these may be added Article 2190, Vernon's Ann.Civ.St.

In our review of the testimony offered by the three jurors upon the motion for new trial, it will be noted Mr. Guthrie said the remark about attorneys' fees was made while the jury was deliberating; Mr. Woolsey said it did not, while Mr. Jackson said that if such a statement was made he did not hear it. It follows that the trial court had ample testimony to support a finding that the misconduct complained of, in fact, did not happen. Defendants say in their brief that, "The Facts are undisputed that a juror stated that about half of plaintiff's recovery would go to her attorney," but we find, as shown by the record, this statement is not accurate; if there was no testimony of probative force to the contrary, the court's imputed finding that in fact it did not happen, would have no support and it would be our duty to disregard it.

Defendants cite us to many cases in their brief, but upon reading them it is found that not one lays down a different rule from that above announced by us. In the main, they discuss the effect upon the validity of a verdict rendered, when the misconduct as complained of in this case, really took place; in the cases cited we find the expression often used, such as "when the misconduct is once established," etc.; then they proceed to discuss the duties of appellate courts, when all reasonable doubt of harm has or has not been removed. If the fact issue be determined by the trial court, that no misconduct happened, as was done in this case, then we do not reach the question of effect it may or may not have had on the verdict. We may profitably say just here, however, that our courts have not been in complete harmony relative to the effect misconduct will have on the verdict rendered. This conflict is made apparent by Traders & Gen. Ins. Co. v. Lincecum, 130 Tex. 220, 107 S.W.2d 585, wherein Dallas Ry. & Terminal Co. v. Garner, Tex.Com.App., 63 S.W.2d 542, cited by defendants, and Bradley v. Texas & P. Ry. Co., Tex.Com.App., 1 S.W.2d 861, cited by plaintiff, are specifically overruled, insofar as they hold that a trial court may consider the testimony of jurors that proves misconduct, such as there considered, did not influence their verdict. As stated above, since the court found the misconduct did not take place, it is un-

necessary to go farther and discuss the effect of something that did not happen. We see no error in the court's ruling on this point.

Another assignment complains that the judgment entered was excessive. It was well established by allegations and proof that plaintiff sustained a loss of $1,280.54, incurred for hospitalization, special nurse, medical and surgical treatment, nursing after leaving the hospital and for loss of salary before returning to work. The remainder of the amount awarded was for pain and suffering endured and to be endured, proximately caused by the injury sustained.

There was ample testimony to support each of these elements of damages, and no attack is made on the judgment for this reason. But the effect of the assignment is that the amount was over estimated by the jury. We find no reason to believe that passion, prejudice, sympathy, bias or other improper motives prompted the award made. The record indisputably discloses that she sustained a complete spiral fracture of the humerus bone in her arm; that the break was as if twisted in two, as stated by the surgeons, rendering the worst type of fracture, and the most difficult to reduce, that is, the most difficult to reunite, or set, as the layman would say. Four efforts were made before the union could be effected; necessarily much pain and suffering followed; in addition to the fracture, her shoulder and wrist were sprained, each of which resulted in pain and suffering; the fourth and last effort made by the surgeons to reunite the bone, was by means of splints and four screws, the latter put through the flesh and muscles of the arm and into the fragments of bone to hold them in place until they could adhere one to the other. During the process of healing, she was required to wear a heavy and cumbersome cast, and when this was removed, her elbow and wrist were stiff and thereafter thirty-five or more treatments were necessary to break the adhesions in these joints to secure a limited locomotion, all of which treatments were very painful. Plaintiff returned to her work at the same salary received before the injury, about four and a half months thereafter, but had continued to suffer up until the time of the trial, in November, 1937, over a year from the time she was injured. At the date of the

trial her arm was crooked and showed the scars made by the insertion of the screws mentioned. It was still painful and there were limitations in its use. These limitations and the pain incident to the use of the injured arm, the doctors said, may continue for a period of years.

It is difficult, indeed, for courts or jurors to set a monetary compensation under such conditions. The amount is arrived at by jurors from an honest exercise of their best judgment, based upon the facts before them. It is, in the nature of things, highly speculative, and controlled largely by the judgment of those called upon to pass upon it. The amount would doubtless vary as often as different groups should speak on the subject. In the absence of anything to indicate the jury was prompted by improper motives, it must be presumed they arrived at the amount awarded, from honest deductions made from the testimony. D. & H. Truck Line v. Lavallee, Tex.Civ.App., 7 S.W.2d 661, writ refused; Schaff v. Young, Tex.Civ. App., 264 S.W. 582, writ refused; Lambert v. Lancaster, Tex.Civ.App., 259 S.W. 270, writ dismissed. The trial court heard the testimony, saw the witnesses as they detailed it, saw the plaintiff's crooked and disfigured arm, observed the demonstrations required of her to use it, which evidenced its impairment, and thereafter declined to set aside the judgment rendered, upon the grounds urged here. We see no abuse of his discretion in doing so, and for these reasons we cannot strike it down. The assignment must be overruled.

The final and last assignment of error presented by defendants, complains of special issue No. 17, and the explanation in connection therewith, which submitted the measure of plaintiff's damages; they read:

"Question 17: In what amount do you find from a preponderance of the evidence the plaintiff has suffered damages by reason of injuries received, in the accident in question?

"In answering this question you may take into consideration and allow plaintiff whatever amount of money you may find will fairly and reasonably compensate her for whatever physical and mental pain and suffering she has undergone as a result of such injuries so received from the date of said accident up to now. And if you further find from a preponderance of the evidence that plaintiff was prevented from working and earning money by reason of such injuries, you may allow her such a sum of money as will fairly and reasonably compensate her for whatever amount you may find she would have earned from the time of such accident up to February 16th, 1937. And if you further find and believe from a preponderance of the evidence that plaintiff will, with reasonable probability, undergo future physical and mental pain and suffering as a result of injuries received in said accident, you may allow her such a sum of money as if paid now will fairly and reasonably compensate her for such future physical and mental pain and suffering; and you may further find for plaintiff whatever amount you may find from a preponderance of the evidence she has paid or become liable to pay for medical attention, hospital bills or nurse hire, but only in such amount as you may find to have been reasonable and necessary.

"In this connection, you are instructed that you may allow plaintiff only such amount as you may find from a preponderance of the evidence arose from injuries received in the accident in question which were proximately caused by the negligence, if any, of the driver of the truck in question."

The objections urged to the explanations made by the court to the foregoing issue were: Because it permitted the jury to find for plaintiff in any amount they desired, and did not limit them to a finding of any particular amount; nor does it limit the time covered in which damages may be considered. It permits and authorizes the jury to award damages for periods of time not warranted by law nor by the pleadings, is vague and uncertain and calculated to lead the jury to believe the court intended for them to find in favor of the plaintiff and against the defendants; it tells the jury what they may consider but does not tell them what they may not consider; and further, because the charge is so worded that the jury was permitted to find in favor of plaintiff for sums of money for periods of time that she labored after she had already returned to work, although there was no pleading or testimony to support the same.

As we understand the objections made to the explanation of the charge, they are because, as given, the jury could, in considering the several elements of damages

named, assess a sum of money twice for the same item. In the charge we find such expressions as "You may further find for plaintiff", and again, referring to another element of damages, it is said, "You may further find for plaintiff"; the objection also includes the complaint that the jury is told what they may consider but are not told what they may not consider. Each and every element of damages referred to by the charge is proper in this case, under the pleading and proof; these include necessary and reasonable expenses incurred by plaintiff for hospitalization, nursing and loss of time and earnings after the injury and prior to the time she returned to work; also pain and suffering endured since the injury and such as she may endure in the future, should the jury believe she would suffer in the future. All these elements are specifically limited, by the last paragraph of the charge, to such of the named elements as the jury should find from a preponderance of the evidence accrued proximately by reason of the negligence, if any, of the defendants. If the objection means that the court should have limited the recovery to an amount not exceeding the sum prayed for in the petition, this would have been manifest error, and if the court limited the recovery to a named amount, the same as prayed for, it would have been far in excess of the aggregate award made, and so long as the verdict did not exceed the amount claimed, no error in this respect is shown. In no part of the explanatory charge is there more than one item of damages covered or encompassed in the element charged on. As authority for the objection raised, we are cited to such cases as Kansas City M. & O. R. Co. v. Florence, Tex.Civ.App., 138 S.W. 430. In that case, the charge objected to provided [page 431]: "In the event you find for plaintiff, you should allow him such damages as you believe from the evidence will compensate him for the injuries, if any, which he received." The quoted expression covered all elements entering into his recovery, but the charge went on to say: "And for any loss of time from his work * * * and for any mental or physical pain * * * suffered, * * *." The subsequent quoted part of the charge clearly renders it ob-jectionable as warranting a recovery of elements, covered by the first expression, which encompassed all damages to which he was entitled to receive.

There is no such general coverage found in the instant case, followed by an enumeration of those special items complained of; we cannot see that, as worded, the charge authorized a double recovery in any particular. Nor do we see any element submitted which was not pleaded and supported by substantial evidence. The elements mentioned by the court in his explanations of the issue are such as may be recovered by plaintiff, if the evidence warranted it. In the case of Farmers' & Merchants' Nat. Bank v. Marshall, Tex.Civ. App., 4 S.W.2d 165, writ dismissed, opinion written by now Chief Justice Dunklin of this court, a very similar issue and explanation were considered. There the issue and explanation are set out in full, as we have done in this case, showing the similarity. Much the same objections were there raised to those before us, and the contention was overruled as presenting no reversible error.

The petition alleged permanent injuries and no exceptions were taken to the manner in which they were pleaded, and, without objections, testimony of the doctors was offered, to the effect that plaintiff would, in all probability, continue to suffer pain from her injuries for some time to come; hence, we can see no merit in the objections raised on that account.

There are other cases than the one above mentioned, cited by defendants, which they claim support their contentions under this assignment, and having read them carefully, we can see distinctions there from the facts and conditions surrounding this case. To set them all out here to show their inapplicability would accomplish no useful purpose, and we therefore omit them.

We have given much consideration and study to each of defendants' assignments of error, and read the voluminous statement of facts on all controverted points, and have found nothing in the record that will require a reversal of the judgment rendered, and it is therefore in all things affirmed.