## McENTIRE v. BAYGENT.

### No. 4693.

Court of Civil Appeals of Texas. El Paso.
Dec. 31, 1949.

Rehearing Denied Jan. 18, 1950.

John J. Watts, Odessa, for appellant.

Strasburger, Price, Holland, Kelton & Miller and Henry Strasburger, Dallas, for appellee.

McGILL, Justice.

This is an appeal from a judgment of the district court of Crane County. Appellant was plaintiff in the trial court, and appellee was defendant.

Plaintiff sued defendant R. E. Baygent, d/b/a Baygent Coaches, to recover damages for personal injuries suffered by him as a result of a bus on which he was a passenger for hire running off of the highway, down an embankment into a bar pit, and continuing until it came to a stop in a creek which intersected the highway, under a bridge. Trial to a jury resulted in answers to special issues favorable to defendant, on which the court rendered judgment that plaintiff take nothing and that defendant recover his costs. Plaintiff has duly perfected his appeal.

Plaintiff alleged: "Plaintiff alleges that on or about January 20, 1948, at about the hour of 11:30 A.M. he was a fare-paying passenger on a bus of the defendant, going from Odessa to San Angelo, Texas, and at such time when the bus reached a point several miles northwest of San Angelo in Tom Green County, Texas, on the Sterling City to San Angelo, Texas Highway, a public highway in the State of Texas, while the bus driver was driving and operating said bus on the highway referred to, and while acting within the course and scope of his employment and for and in behalf of the defendant, he suddenly operated, drove and ran off the paved and traveled portion of said highway and off the embankment and into a creek bed, hitting the

opposite creek bank with terrific force, causing the bus to stop suddenly, and knocking the plaintiff against the interior of the bus with terrific force and impact, causing the injuries and damages hereinafter alleged, all due to the negligence of the defendant's driver."

Defendant answered: "Specially answering, defendant says that the bus was going down the highway at a legal and reasonable rate of speed when it saw an automobile approaching, which said automobile was over the black center line mark on the highway and was thus to some extent on both sides of the highway, and the driver of the bus was forced to pull to his right and in so doing the right wheel of the bus got on the shoulder, which turned out to be soft because of a recent rain and snow, and the driver consequently lost control of the bus and found that if he attempted to pull back to his left he would run into the concrete bridge or right bannister of the bridge before he could get the bus entirely on the highway, and he did the only thing left to do, which was to continue to the right and into the ditch."

The jury found: (1) Immediately prior to the occurrence in question defendant's bus was being operated at a rate of speed of 45 miles per hour; (2) such rate of speed did not constitute negligence; (4) defendant's bus driver immediately prior to the occurrence in question did not fail to keep a proper lookout to keep defendant's bus on the highway; (7) the act of defendant's bus driver in driving said bus off of the highway did not constitute negligence; (10) the bus driver at the time was acting under an emergency; (11) there was an on-coming car that was driving on the bus's side of the road altogether or partly; (12) the on-coming car was a new and independent cause of the bus leaving the pavement; (13) plaintiff's injuries were the result of an unavoidable accident.

The uncontroverted evidence shows that the accident occurred at the time and place alleged by plaintiff. There is a sharp conflict in the evidence as to whether there was an on-coming car driving on the bus's side of the road either altogether or partly.

Appellant presents eight points on which he urges a reversal. The eighth point complains of the court's refusal to permit him to show (which he offered to do in the absence of the jury) that the witness W. H. Wesson whom he offered in his behalf and who was also a passenger on the bus at the time of the accident, was paid $9,000.00 by defendant for injuries received by him as a result of the same accident. We sustain this point. It may be shown that the defendant in a negligence case has paid the claims of others for damages resulting just as the plaintiff's did and from the same cause as tending to show an admission of liability. 17 Tex. Jur. p. 559, Sec. 232.

As said in Galveston, H. & S. A. Ry. Co. v. Hertzig, 3 Tex.Civ.App. 296, 22 S.W. 1013, 1014: "The payment of the claims of the others did not necessarily admit a liability either to them or to the plaintiff; but, unexplained, it tends in that direction. It was susceptible of explanation, and its weight depended upon such facts as might be adduced to qualify it, and was therefore proper to go before the jury for their consideration. Wells v. Fairbanks, 5 Tex. 582; 2 Whart.Ev. § 1081. If the evidence actually given by the witnesses was objectionable, as involving a statement of a compromise, which is made by no means clear from the record, the question did not call for it, and further objection should have been made." See also Missouri, K. & T. Ry. Co. of Texas v. Kellerman, 39 Tex.Civ.App. 274, 87 S.W. 401; Texas & N. O. R. Co. v. Commercial Union Assur. Co., Tex.Civ. App., 137 S.W. 401; Magnolia Petroleum Co. v. Reed, Tex.Civ.App., 42 S.W.2d 274, and authorities there cited; Thweatt et al. v. Ocean Accident & Guaranty Corp., Tex.Civ.App., 62 S.W.2d 250, loc. cit. 254; Wr.Ref.; Magnolia Petroleum Co. v. Owen, Tex.Civ.App., 101 S.W.2d 354, Wr. Dis.; Smith v. Columbia Carbon Co., Tex. Civ.App., 196 S.W.2d 660, loc. cit. 663, reversed other grounds 145 Tex. 478, 198 S.W.2d 727; Texas Law of Evidence, McCormick & Ray, p. 647, Sec. 502; 31 C.J. S., Evidence, § 292, p. 1055. Also see Sec. XXI Texas Law Review, p. 298, for

an excellent discussion and analysis of the authorities by Dean Charles T. McCormick, in which the suggestion is advanced that a preliminary question should be submitted to the trial judge for his determination of whether the settlement as to which evidence is offered is the result of a compromise and the prediction is made that if the trial court so finds, the Supreme Court will hold evidence of such settlement inadmissible. The court's refusal to permit plaintiff to introduce this evidence constitutes prejudicial error which requires a reversal. We cannot speculate on what effect such evidence may have had on the jury. The issues of the defendant's negligence were sharply controverted.

■■ Points 1, 2 and 4 complain of the court's action in sustaining defendant's objections to the argument of plaintiff's counsel and in instructing the jury not to consider such argument, and point 3 of the action of the court in overruling plaintiff's objection to the argument of defendant's counsel. Since such arguments probably will not occur on another trial we shall not discuss these points. Point 5 complains of the court's action in permitting defendant to prove by plaintiff that during his entire trip on the bus the bus driver was nice, and friendly and cooperative. The point has no basis in the record since it appears that the court sustained the exception of plaintiff's counsel to the admission of such testimony. The 6th point complains of the following: A patrolman named Marion who investigated the accident and interviewed the bus driver was permitted to testify over plaintiff's objection that he went to Shannon Hospital about 45 or 50 minutes after the accident and interviewed the witness Wesson and with reference to such interview testified: "I asked him if there was a car in the middle of the road and he said 'Yes, there was a lady driving a car in the middle of

the road and the bus driver did everything in the world to keep from hitting the car'." The objection to this testimony was that it was hearsay and given while the witness was under the influence of narcotics. There is no evidence that Wesson had been given any hypos or that he was under the influence of narcotics at the time. His statement to the patrolman, though hearsay, was admissible for the purpose of impeachment since he had testified at the trial for plaintiff that there were no cars in front of the bus on the bus's side of the road which required the bus driver to dodge. Since appellant did not request the court to limit the testimony to the impeachment of Wesson, he cannot complain of its admission for all purposes. 3 Tex. Jur. pp. 192–193, Sec. 129; 3-A Tex.Jur. pp. 214–215, Sec. 167; Sproles Motor Freight Lines v. Juge, Tex.Civ.App., 123 S.W.2d 919, loc. cit. 923 (9), Wr.Dis.Judg. Correct.

■ The 7th point complains of the conduct of defendant's counsel in repeatedly propounding questions to the witness Mrs. Ray Schleeter, designed to elicit answers from her which would indicate that her testimony to effect that there was no car in the road in front of the bus immediately prior to the accident was in conflict with a newspaper article which appeared in the San Angelo Standard Times on the day of the accident. In our opinions the questions propounded did have this tendency. However, we are not prepared to hold that such conduct constitutes reversible error, since we have concluded that the case must be reversed on another ground. On another trial should counsel persist in such conduct the trial court has ample power to put a stop to it by contempt proceedings, if necessary. For the reason indicated, the judgment is reversed and the cause remanded for another trial.

Reversed and remanded.